# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

| | |
|---|---|
| BF FUNDING, LLC, a North Carolina limited liability company | Case No. |
| Plaintiff, | Honorable |
| v. | Van Buren County Circuit Court Case No. 17-067245-CB |
| BOERSEN FARMS, INC., a Michigan corporation; BOERSEN FARMS AG, LLC, a Michigan limited liability company; BOERSEN FARMS & AFFILIATES, LLC, a Michigan limited liability company; BOERSEN AG PARTNERS, LLC, a Michigan limited liability company; BOERSEN LAND CO., LLC, a Michigan limited liability company; DENNIS BOERSEN; and CHS CAPITAL, LLC, a Colorado limited liability company | **NOTICE OF REMOVAL** |
| Defendants. | |

_____/

| | |
|---|---|
| Charles A. Lawler (P65164) | Ross A. Leisman (P41923) |
| Brian P. Lick (P71577) | Mika Meyers PLC |
| Clark Hill PLC | Attorneys for Defendant, CHS Capital, LLC, |
| Attorneys for Plaintiff | a Minnesota limited liability company |
| 212 East Grand River Avenue | 900 Monroe Avenue, NW |
| Lansing, MI 48906 | Grand Rapids, MI 49503 |
| (517) 318-3100 | (616) 632-8000 |
| | |
| | Ronald J. Vander Veen (P33067) |
| | Cunningham Dalman PC |
| | Attorneys for Boersen Defendants |
| | 321 Settlers Rd |
| | PO Box 1767 |
| | Holland, MI 49422-1767 |
| | (616) 392-1821 |

_____/

Defendant CHS Capital, LLC, a Minnesota limited liability company ("CHS Minnesota"), removes this action from the 36th Circuit Court for the County of Van Buren, Michigan to the United States District Court for the Western District of Michigan, Southern Division.  In support, CHS Minnesota states:

1.      On June 2, 2017, Plaintiff BF Funding, LLC filed an eight-count Complaint against Defendants in the 36th Judicial Circuit Court, Van Buren County, Michigan, bearing Case No. 17-067245-CB, along with a Verified *Ex Parte* Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction and Motion for Possession Pending Final Judgment ("Motion of Injunctive Relief").

2.      Upon information and belief, on or about June 9, 2017, all Defendants, other than CHS Minnesota, were served with the Summons and Complaint and the Motion for Injunctive Relief.  Attached as **Exhibit A** are copies of the process and pleadings served on Defendants.

3.      CHS Minnesota was not served with the Summons and Complaint or the Motion for Injunctive Relief but received a courtesy copy from counsel representing other such Defendants.

4.      Defendant CHS Capital, LLC, a Colorado limited liability company, was improperly named as a Defendant as it has no connection to the Plaintiff, the other Defendants, or the circumstances alleged in the Complaint.

5.      CHS Minnesota, a Minnesota limited liability company, is a secured creditor of each of the Defendants Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co., LLC, and Dennis Boersen with a first priority security interest in the "Corn" as that term is defined in the Complaint.

6.       This Notice of Removal is being filed within 30 days of service of the Complaint upon Defendants, with the exception of CHS Minnesota which has not been properly named in the Complaint nor formally served.

7.       This action is one in which the Court has original diversity jurisdiction under 28 U.S.C. § 1332.  For the reasons stated below, this civil action is subject to removal to this Court under 28 U.S.C. § 1441(b).

8.       This Court has jurisdiction over this case based on diversity of citizenship pursuant to 28 USC 1332(a).

## CITIZENSHIP OF PARTIES

9.       Plaintiff alleges that is organized under the laws of the State of North Carolina.

10.       Upon information and belief, Defendant Boersen Farms, Inc. is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Michigan.

11.       Upon information and belief, Defendant Boersen Farms AG, LLC, is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Michigan.

12.       Upon information and belief, Defendant Boersen Farms & Affiliates, LLC, is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Michigan

13.       Upon information and belief, Defendant Boersen AG Partners, LLC, is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Michigan.

14.       Upon information and belief, Defendant Boersen Land Co., LLC, is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Michigan.

15.       Upon information and belief, Defendant Dennis Boersen is a resident of the State of Michigan.

{02184834 1 }

16.     Upon information and belief, Defendant CHS Capital, LLC, is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Colorado.

17.     CHS Minnesota is now, and was at the time of the filing of the Complaint, organized under the laws of the State of Minnesota.

## AMOUNT IN CONTROVERSY

18.     The amount in controversy requirement is also clearly satisfied.  In its complaint, Plaintiff claims damages in excess of $75,000, exclusive of interest and costs.

19.     Thus, pursuant to 28 U.S.C. § 1332(a)(1), there is complete diversity of citizenship between Plaintiff, Defendants Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co., LLC, and Dennis Boersen who are citizens of the State of Michigan, Defendant CHS Capital, LLC, who is a citizen of the State of Colorado, and CHS Minnesota who is a citizen of the State of Minnesota.

20.     Therefore, under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b), removal to this Court is proper.

21.     A Notice of Filing and a copy of this Notice has been filed with the Van Buren County Circuit Court and served upon Plaintiff and Defendants as required by 28 U.S.C. § 1446(d).

22.     By reason of the above, Defendants are entitled to remove this action to this Court.

23.     The allegations of this notice are true and correct and this cause is within the jurisdiction of the United States District Court for the Western District of Michigan.

{02184834 1 }

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for CHS Capital, LLC, a Minnesota
limited liability company


Dated: June 13, 2017          By:    /s/Ross A. Leisman
                                     Ross A. Leisman (P41923)
                                     900 Monroe Avenue, NW
                                     Grand Rapids, MI 49503
                                     (616) 632-8000
                                     rleisman@mikameyers.com

{02184834 1 }

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2017, I electronically filed the foregoing paper with the Clerk of

the Court using the ECF system which will send notification of such filing to the following if they

are ECF participants, and I hereby certify that I have mailed by United States Postal Service the

paper to the following in the event they are non-ECF participants:

Charles A. Lawler                           Clerk of the Court
Brian P. Lick                               Van Buren County Circuit Court
Clark Hill PLC                              212 E. Paw Paw Street
212 East Grand River Avenue                 Paw Paw, MI 49079
Lansing, MI 48906

CHS Capital, LLC, a Colorado limited        Ronald J. Vander Veen
liability company                           Cunningham Dalman PC
c/o Registered Agent Solutions, Inc.        321 Settlers Rd
2285 So. Michigan Rd.                       PO Box 1767
Eaton Rapids, MI 48027                      Holland, MI 49422-1767

/s/Ross A. Leisman
Mika Meyers PLC
Attorneys for Defendants
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000
rleisman@mikameyers.com

6

{02184834 1 }

# EXHIBIT A

| Approved, SCAO | Original - Court<br>1st Copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**JUDICIAL DISTRICT**<br>**36TH JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS AND COMPLAINT** | CASE NO.<br>17-        -CB<br>CO67345 |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| 212 Paw Paw St., Paw Paw, Michigan 49079 | (269) 657-8200 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>BF FUNDING, LLC, a North Carolina limited liability Company<br>100 Elks Club Rd.<br>Brevard, North Carolina 28712-4842 | v | Defendant's name(s), address(es), and telephone no(s).<br>BOERSEN FARMS, INC.<br>Attn: Sandra Boersen<br>    Resident Agent<br>6241 Ransom St.<br>Zeeland, Michigan 49464 |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
Charles A. Lawler (P65164)
CLARK HILL PLC
212 East Grand River Avenue, Lansing, Michigan 48906
(517) 318-3100

**SUMMONS**   NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>6/2/17 | This summons expires<br>9/1/17 | Court clerk<br>Suzie Roehm |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff.  Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Brevard, North Carolina | Defendant(s) residence (include city, township, or village)<br>Zeeland, Michigan |
|---|---|

| Place where action arose or business conducted<br>Zeeland, Van Buren County , State of Michigan | |
|---|---|

06/02/2017
Date

Signature of attorney/plaintiff  Charles A. Lawler (P65164)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (5/15)  **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | **SUMMONS AND COMPLAINT**<br>Case No. |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
        List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                          Date

My commission expires: _____ Signature: _____
                              Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments

_____ on _____
                                              Day, date, time

                                    on behalf of _____ .

Signature _____

# STATE OF MICHIGAN

## 36TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

BF FUNDING, LLC, a North Carolina
Limited Liability Company,

      **Plaintiff,**

V

BOERSEN FARMS, INC., BOERSEN
FARMS AG, LLC, BOERSEN FARMS
& AFFILIATES, LLC, BOERSEN AG
PARTNERS, LLC, BOERSEN LAND
CO LLC, and affiliated companies,
DENNIS BOERSEN, and CHS
CAPITAL, LLC,

      **Defendants.**

Case No. 17- 067245 -CB

Hon.

**BUSINESS COURT CASE**
This case qualifies as a business or
commercial dispute as defined by MCL
600.8031 and should be assigned to the
Business Court Docket

---

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiff
THERE IS NO OTHER PENDING OR
RESOLVED CIVIL ACTION ARISING
OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN THE
COMPLAINT.

1

## VERIFIED COMPLAINT

Plaintiff, BF FUNDING, LLC, by and through its attorneys, CLARK HILL PLC, and for its Verified Complaint, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     BF Funding, LLC ("BF Funding" and/or "BFF") is a North Carolina limited liability company, with a principal office address of 100 Elks Club Rd., Brevard, NC 28712-4842.

2.     Defendant, Boersen Farms, Inc., is a Michigan corporation with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Sandra Boersen is the Registered Agent of Boersen Farms, Inc.

3.     Defendant, Boersen Farms Ag, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Farms Ag, LLC.

4.     Defendant, Boersen Farms & Affiliates, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Farms & Affiliates, LLC.

5.     Defendant, Boersen Ag Partners, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Ag Partners, LLC.

6.     Defendant, Boersen Land Co LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Land Co LLC.

2

7.      Defendants Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, and Boersen Land Co LLC and its affiliates, are collectively referred to herein as ("Boersen Farms" and/or "Boersen").

8.      On information and belief, Boersen Farms conducts business as Boersen Farms and/or Boersen Farms Grain.

9.      Boersen Farms conducts business in Van Buren County.

10.     Defendant, Dennis Boersen ("D. Boersen"), is the Resident Agent, officer, member and owner/or owner of Boersen Farms. D. Boersen conducts business in Van Buren County.

11.     Defendant, CHS Capital, LLC ("CHS"), is a Colorado limited liability company conducting business in Van Buren County.  The Registered Agent for CHS is Registered Agent Solutions, Inc.  The Registered Office Address for CHS is 2285 S. Michigan Rd., Eaton Rapids, MI 48027.

12.     Venue is proper pursuant to MCL 600.1621(a), MCL 600.1627, MCL 600.1629 and MCL 600.1641.

13.     The amount in controversy is in excess of $25,000.00, exclusive of interest, costs and attorney fees, and jurisdiction is otherwise proper in this Court.

## GENERAL ALLEGATIONS

14.     BF Funding incorporates all preceding paragraphs as if restated in full.

15.     Defendants Boersen Farms is in the business of growing and storing corn for eventual sale to ethanol producers and others.

16.     BF Funding is in the business of purchasing, warehousing and selling corn.

3

17.     BF Funding entered into a purchase and sale agreement ("Purchase Agreement") with Boersen Farms on August 29, 2016 for the purchase of up to 11,000,000 Bushels of harvested, dried and shelled corn ("Corn"). See Corn Purchase and Sale Agreement attached as Exhibit A.

18.     Pursuant to the Purchase Agreement, Boersen Farms agreed to store the Corn at Boersen Farms' storage facilities, located at 63600 M-51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079 ("Storage Facilities").

19.     Boersen Farms was able to re-purchase Corn from BF Funding pursuant to certain terms and conditions in the Purchase Agreement.

20.     Boersen Land Co LLC owns/owned the property on which the Storage Facility is located.

21.     Boersen Farms agree to maintain property and casualty insurance covering the Storage Facility and Corn, and that the policy would name BF Funding as an additional insured. Exhibit A.

22.     Pursuant to the Purchase Agreement, Boersen Farms warranted that all Corn would be free of all liens and encumbrances. Exhibit A.

23.     Boersen Farms ensured BF Funding, that it had good and marketable title to all of the Corn, free and clear of any liens, security interests, or other encumbrances. Exhibit A.

24.     Boersen Farms agreed that no security interest would be granted during the term of the Purchase Agreement. Exhibit A.

25.     Pursuant to 7 US 1631(d), "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest

4

created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest."

26.     Because BF Funding did not receive written notice of a security interest in the Corn one year before the purchase of the Corn, BF Funding purchased the Corn free from any security interests.

27.     BF Funding received a letter on or about October 3, 2016 from CHS Capital, LLC ("CHS"), stating that future payments must be made payable to CHS.

28.     BF Funding ceased purchasing Corn from Boersen Farms after receipt of the letter from CHS.

29.     Boersen Farms failed to respond to BF Funding's inquiries regarding the CHS debt and alleged assignment.

30.     Boersen Farms acquiesced in the ceasing of purchase orders.

31.     BF Funding purchased 800,701.63 bushels of Corn pursuant to the Purchase Agreement. See Sales Receipts attached as Exhibit B.

32.     Boersen Farms exercised its Repurchase Option on 29,804 bushels.

33.     Although BF Funding provided Boersen Farms multiple opportunities to re-purchase Corn, Boersen Farms failed to exercise any further Repurchase Options.

34.     Beginning April 7, 2017, BF Funding began selling the purchased Corn to a third party.

35.     Through May 4, 2017, BF Funding obtained 492,097.16 bushels of its Corn from Boersen Farms' silos.

36.     278,800.47 bushels of Corn purchased by BF Funding remains in the possession of Boersen Farms and/or CHS, and are being stored at the Storage Facility located at 63600 M-

51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079, and/or other storage facilities own, operated, or used by Boersen Farms and/or CHS.

37.     On information and belief, Boersen Farms conveyed certain real property to CHS, which may include the storage facilities at which BF Funding's Corn is being stored.

38.     The 278,800.47 bushels of Corn owned by BF Funding which remain in the possession of Boersen Farms and/or CHS is valued at $986,953.66 (based on Cargill's May 30, 2017 price of $3.54/bushel at its Decatur, Michigan facility).

39.     The Purchase Agreement provides that BF Funding may "[t]ake possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of, keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of the like kind and amount collateral by Boersen should BFF need to take possession of collateral." Exhibit A.

40.     Pursuant to the Purchase Agreement, BF Funding also has the right to sell its Corn and conduct a sale of the Corn on Boersen Farms' property.

41.     The 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities, are BF Funding's property.

42.     Neither Boersen Farms nor CHS have permitted BF Funding to take possession of the 278,800.47 bushels of BF Funding's Corn.

6

43.   Neither Boersen Farms nor CHS has any rights or interest in the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities.

44.   Neither Boersen Farms nor CHS have any right to transfer, sell, convey, encumber, or remove BF Funding's 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

## COUNT I - BREACH OF CONTRACT

45.   BF Funding incorporates all preceding paragraphs as if restated in full.

46.   Boersen Farms entered into a Purchase Agreement with BF Funding for the sale of Corn to BF Funding.  Exhibit A.

47.   BF Funding purchased 800,701.63 bushels of Corn from Boersen Farms pursuant to the Purchase Agreement.

48.   278,800.47 bushels of Corn purchased by BF Funding remain in the possession of Boersen Farms and/or CHS.

49.   Boersen Farms and/or CHS has failed and refused to release, deliver, or turn over the 278,800.47 bushels of Corn purchased by BF Funding.

50.   Boersen Farms' refusal to release, deliver, or turn over the 278,800.47 bushels of Corn purchased by BF Funding constitutes breach of the Purchase Agreement.

51.   Boersen Farms' misrepresentations regarding its financial condition prior to the parties entering the Purchase Agreement constitutes a breach of the Purchase Agreement.

52.   Boersen Farms' insolvency constitutes a breach of the Purchase Agreement.

53.   Boersen Farms' misrepresentations regarding the existence of security interest in the Corn constitutes a beach of the Purchase Agreement.

7

54.     Boersen Farms' failure to pay its debts when due constitutes a breach of the Purchase Agreement.

55.     BF Funding has been damaged as a result of Boersen Farms' breaches of the Purchase Agreement, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

WHEREFORE, Plaintiff BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, and Boersen Land Co LLC, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT II - UNJUST ENRICHMENT AGAINST BOERSEN FARMS AND CHS

56.     BF Funding incorporates all preceding paragraphs as if restated in full.

57.     BF Funding has paid Boersen Farms for 278,800.47 bushels of Corn that it has not received.

58.     BF Funding has conferred valuable benefits to Boersen Farms in consideration for the 278,800.47 bushels of Corn.

59.     The reasonable value of the benefit BF Funding has conferred to Boersen Farms is the value of the 278,800.47 bushels of Corn which remains in Boersen Farms' and/or CHS' possession.

60.     The 278,800.47 bushels of Corn purchased by BF Funding which remain in the possession of Boersen Farms and/or CHS is valued at $986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

8

61.   Boersen Farms and/or CHS have asserted unlawful possession or dominion over the 278,800.47 bushels of Corn purchased by BF Funding without compensating BF Funding.

62.   Despite repeated demands, Boersen Farms and/or CHS have refused to release the 278,800.47 bushels of Corn purchased by BF Funding and/or otherwise compensate BF Funding for the market value of the Corn.

63.   Boersen Farms and/or CHS have benefited by taking unauthorized possession and/or use of the 278,800.47 bushels of Corn owned by BF Funding without compensating BF Funding, and therefore have been unjustly enriched by the market value of the Corn.

64.   It would be inequitable if Boersen Farms and/or CHS were permitted to retain the valuable benefits conferred by BF Funding without complete compensation to BF Funding for the market value of the Corn.

WHEREFORE, Plaintiff BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and CHS Capital, LLC, in the amount of $986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT III - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

65.   BF Funding incorporates all preceding paragraphs as if restated in full.

66.   Boersen Farms and CHS were aware that BF Funding intended to sell the 278,800.47 bushels of Corn to third parties.

67.   The Purchase Agreement provides that BF Funding may sell the purchased Corn, including the 278,800.47 bushels of Corn in Boersen Farms' possession, to third parties if not timely repurchased by Boersen Farms.

215834974.2 58332/316093

68.     Beginning April 7, 2017, BF Funding began selling the purchased Corn to a third party.

69.     The 278,800.47 bushels of Corn purchased by BF Funding remains in the possession of Boersen Farms and/or CHS.

70.     Boersen Farms and/or CHS have failed and refused to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding.

71.     Boersen Farms' and/or CHS' refusal to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding constitutes tortious interference with BF Funding's sale of its Corn.

72.     Boersen Farms' and/or CHS's intentionally interfered with the sale of BF Funding's Corn by unlawfully converting the Corn for its own use and/or by otherwise wrongfully refusing to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding.

73.     Boersen Farms' and/or CHS's interference has caused the sale of the Corn to the third party purchaser to not be completed.

74.     As a result of Boersen Farms' and/or CHS's actions, BF Funding has and will continue to incur substantial damages plus interest and attorney fees.

75.     Boersen Farms and/or CHS have knowingly and improperly interfered with BF Funding's relationship and expectancy with the third-party purchaser of the Corn.

76.     As a direct and foreseeable result of Boersen Farms' and/or CHS's intentional and improper interference, BF Funding has and will continue to suffer substantial damages in the form of market value of the Corn, lost profits, interest and attorney fees, lost business

10

opportunities, loss of goodwill and damage to reputation, such that damages alone cannot fully compensate the BF Funding for its loss.

77.     BF Funding is also entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and CHS Capital, LLC, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT IV – FRAUDULENT MISREPRESENTATION

78.     BF Funding incorporates all preceding paragraphs as if restated in full.

79.     As provided above, Boersen Farms made false material assertions to induce BF Funding to enter into the Purchase Agreement.

80.     Boersen Farms represented that it would maintain property and casualty insurance covering the Storage Facility and Corn, and that the policy would name BF Funding as an additional insured. Exhibit A.

81.     Pursuant to the Purchase Agreement, Boersen Farms warranted that all Corn would be free of all liens and encumbrances. Exhibit A.

82.     Boersen Farms ensured BF Funding, that it had good and marketable title to all of the Corn, free and clear of any liens, security interests, or other encumbrances. Exhibit A.

83.     Boersen Farms agreed that no security interest would be granted during the term of the Purchase Agreement. Exhibit A.

11

84.     Boersen Farms misrepresented its financial condition to induce BF Funding to enter into the Purchase Agreement.

85.     Boersen Farms misrepresented that it was solvent to induce BF Funding to enter into the Purchase Agreement.

86.     Boersen Farms knew the above-mentioned representations to BF Funding were false.

87.     Boersen Farms knew that the representations were false when made, or made the representations recklessly, without knowledge of the truth.

88.     Boersen Farms made the representations to induce BF Funding's reliance.

89.     BF Funding separately relied on each of the misrepresentation made by Boersen Farms which induced BF Funding to enter into the Purchase Agreement with Boersen Farms.

90.     As a result of reliance on the false material assertions, BF Funding has suffered and will continue to suffer substantial damages.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and Dennis Boersen in the amount of $ 986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.


## COUNT V - DECLARATORY RELIEF

91.     BF Funding incorporates all preceding paragraphs as if restated in full.


12

92.     This is a case of actual controversy between BF Funding and Boersen Farms and CHS within the jurisdiction of this Court as provided for by MCR 2.605.

93.     Pursuant to MCR 2.605, this Court is conferred with the authority to declare the rights and other legal relations of interested parties.

94.     Due to the wrongful actions of Boersen Farms and/or CHS, BF Funding has and will continue to incur significant damages as detailed above.

95.     Boersen Farms' and/or CHS' unreasonable and unauthorized actions require immediate adjudication so that BF Funding may rightfully obtain its property and complete its contracts with third parties.

96.     In accordance with the foregoing, there exists an actual controversy between the Parties regarding the rights to the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities, and declaratory relief is appropriate.

97.     The controversy between the Parties impacts BF Funding's ability to complete its contracts for the sale of its rightful property.

98.     Immediate adjudication of the controversy is necessary in order to guide the Parties' conduct and preserve the Parties' rights.

99.     Declaratory relief is necessary to establish BF Funding's right to the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities.

100.    Declaratory relief is necessary to prohibit Boersen Farms and/or CHS from taking further actions to interfere with BF Funding's property rights and contractual rights to take possession of the 278,800.47 bushels of Corn.

13

101.    Pursuant to MCR 2.605, BF Funding requests that this Court declare the rights of the parties with respect to the instant controversy and require Boersen Farms and/or CHS to: (1) turn over 278,800.47 bushels of Corn to BF Funding; (2) and pay BF Funding its actual costs and expenses incurred in connection with this matter.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court issue a Declaratory Judgment:

A.    Declaring that BF Funding, LLC is the rightful owner of 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities;

B.    Ordering Boersen Farms and/or CHS to turn over and release 278,800.47 bushels of Corn to BF Funding;

C.    Ordering Boersen Farms and/or CHS to pay BF Funding its actual costs and expenses incurred in connection with this matter;

D.    Awarding BF Funding its costs, attorney fees and such other relief as may be appropriate.

## COUNT VI – TEMPORARY RESTRAINING ORDER / PERMANENT INJUNCTION

102.    BF Funding incorporates all preceding paragraphs as if restated in full.

103.    As stated in this Verified Complaint and Plaintiffs' Verified Ex Parte Motion For Temporary Restraining Order, Order To Show Cause, Preliminary Injunction and For Possession Pending Final Judgment, filed simultaneously herewith, Boersen Farms and/or CHS have damaged and will continue to damage: BF Funding, its business relationships and expectancy, name and good will, and standing in the industry.

104.    BF Funding has repeatedly attempted to take possession of its 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

14

105.    However, despite BF Funding's demands, Boersen Farms and/or CHS have failed and refused to turn over and release the 278,800.47 bushels of Corn to BF Funding.

106.    BF Funding will suffer immediate and irreparable injury, loss, and damage if the Court does not immediately issue an order granting the relief sought.

107.    Further, an ex parte order is necessary because notice of complaint and motion will precipitate adverse action by Boersen Farms and/or CHS before an order can be issued.

108.    Boersen Farms and/or CHS are in possession of BF Funding's property.

109.    On information and belief, Boersen Farms and/or CHS will attempt to sell BF Funding's 278,800.47 bushels of Corn.

110.    BF Funding's remedies at law are inadequate and they will suffer immediate and irreparable damage if injunctive relief is not granted immediately.

111.    The value and operation of BF Funding's business will be greatly tarnished and diminished if the Court does not take immediate action.

112.    As more fully set forth in the motion and supporting Brief: (1) BF Funding is likely to succeed on the merits, (2) BF Funding will suffer immediate and irreparable harm, (3) neither Boersen Farms nor CHS will suffer substantial harm, and (4) the public interest favors injunctive relief.

113.    CHS has already attempted to wrongfully claim a security interest in BF Funding's Corn, in violation of 7 US 1631(d).

114.    The threatened and actual substantial harm inflicted on BF Funding outweighs any potential injury that Boersen Farms and CHS may assert.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court grant its Motion and enter the *Ex Parte* Temporary Restraining Order, and Order to Show Cause, in the form attached to the Motion granting Plaintiffs the following relief:

A.  Issue a temporary restraining order to enjoin Boersen Farms and CHS from transferring, selling, conveying, releasing, disposing, encumbering, or removing any corn from storage facilities currently owned, operated or used by Boersen Farms, or otherwise transferred by/from Boersen Farms and currently owned, operated or used by CHS until further order of the Court;

B.  Issue a show cause order scheduling a hearing date on an expedited basis at which time, Boersen Farms and CHS must appear and show cause why a preliminary injunction should not be issued while the case is pending; and

C.  Order any other relief this Court deems appropriate.

## COUNT VII – CLAIM AND DELIVERY

115.  BF Funding incorporates all preceding paragraphs as if restated in full.

116.  Pursuant to the Purchase Agreement, BF Funding has purchased and owns 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

117.  Pursuant to 7 US 1631(d), "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest."

16

118.    Because BF Funding did not receive written notice of a security interest in the Corn one year before the purchase of the Corn, BF Funding purchased the Corn free from any security interests.

119.    On information and belief, BF Funding's 278,800.47 bushels of Corn remain in the possession of Boersen Farms and/or CHS, and are being stored at the Storage Facility located at 63600 M-51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079, and/or other storage facilities own, operated, or used by Boersen Farms and/or CHS.

120.    BF Funding is entitled to immediate possession of the 278,800.47 bushels of Corn.

121.    The 278,800.47 bushels of Corn are not in Boersen Farms' and/or CHS' custody by virtue of any execution or attachment against the personal property of BF Funding, nor by virtue of any warrant for the collection of taxes, assessments, or fines.

122.    By virtue of the Purchase Agreement, and MCL 600.2920, BF Funding is entitled to immediate possession of 278,800.47 bushels of Corn.

123.    The Purchase Agreement provides that BF Funding may "[t]ake possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of, keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of the like kind and amount collateral by Boersen should BFF need to take possession of collateral." Exhibit A.

17

124.    Pursuant to the Purchase Agreement, BF Funding also has the right to sell the Corn and conduct a sale of the Corn on Boersen Farms' property.

125.    The 278,800.47 bushels of Corn are presently subject to damage, sale, or deterioration due to failure to allow BF Funding to recover them, the passage of time, depreciation, and disposal or dissipation by Boersen Farms and/or CHS.

126.    On information and belief, the 278,800.47 bushels of Corn are not covered by insurance in accordance with the requirements of the Purchase Agreement.

127.    Despite BF Funding's requests, Boersen Farms and/or CHS have refused to turn over, release, or deliver the 278,800.47 bushels of Corn to BF Funding or otherwise allow BF Funding to access and seize its property.

WHEREFORE, BF Funding, LLC, respectfully requests that this Court:

a.    Issue an order requiring Boersen Farms and/or CHS to refrain from transferring, selling, conveying, releasing, using, damaging, destroying, concealing, disposing, encumbering or substantially impairing the value of any corn from storage facilities currently owned, operated or used by Boersen Farms, or otherwise transferred by/from Boersen Farms and currently owned, operated or used by CHS, until further order of the Court;

b.    Enter a judgment granting BF Funding immediate possession of 278,800.47 bushels of Corn and/or a judgment for $986,953.66 against Boersen Farms and CHS;

c.    Order the Sheriff or other court officer to seize 278,800.47 bushels of Corn from Boersen Farms and/or CHS within twenty-one (21) days and deliver it to BF Funding; and

18

d.      Award BF Funding all other interim and final relief, including monetary

damages, costs, and attorney fees, as the Court finds equitable and just.

## COUNT VIII – CONVERSION

128.    BF Funding incorporates all preceding paragraphs as if restated in full.

129.    BF Funding has purchased and owns 278,800.47 bushels of Corn stored at

Boersen Farms' and/or CHS' storage facilities.

130.    Boersen Farms and/or CHS have wrongfully converted or asserted dominion over

BF Funding's 278,800.47 bushels of Corn for their own use and benefit.

131.    Boersen Farms and/or CHS have failed and refused to turn over, release, or

deliver the 278,800.47 bushels of Corn to BF Funding.

132.    By so doing, Boersen Farms and/or CHS have converted the 278,800.47 bushels

of Corn for their own use and benefit, to the detriment of BF Funding without its consent.

133.    Boersen Farms' and/or CHS' actions constitute conversion under MCL

§600.2919a and/or common law conversion.

134.    Boersen Farms' and/or CHS' conversion of BF Funding's property has caused BF

Funding actual damages in the amount of $986,953.66, plus costs and attorney fees.

135.    Pursuant to MCL 600.2919a, BF Funding is entitled to recover damages in the

amount of three times the amount of actual damages, plus costs and reasonable attorney fees.

136.    Under MCL 600.2919a(2), "This recovery is in addition to any other right or

remedy the person may have at law or otherwise."

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a

Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC,

Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, Dennis

Boersen, and CHS Capital, LLC, in the treble damages amount of $2,960,860.98, plus all costs

and attorney fees, pursuant to MCL 600.2919a and the Purchase Agreement, and all other relief

this Court finds just and appropriate.

## Verification

Bruce Roberts, being duly sworn, states as follows:

1.      I have reviewed the foregoing Complaint.

2.      I have personal knowledge of the facts set forth in the Complaint.

3.      The facts and statements contained within the Complaint are true to the best of my

knowledge, information and belief.

Date: May 31 , 2017

Bruce Roberts, Manager of Carolina Financial
Group, LLC, Managing Member of BF
Funding LLC.

Subscribed and sworn to before me
this 31 day of May, 2017.

_____, Notary Public
Transylvania County, North Carolina.
Acting in Transylvania County, North Carolina.
My Commission Expires: 4|25|2022

> JANE STAMEY
> Notary Public – North Carolina
> Transylvania County
> My Commission Expires Apr 25, 2022

Respectfully submitted,

CLARK HILL PLC

By: _____
Charles A. Lawler (P65164)
Brian P. Lick (P71577)
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys For Plaintiff

Date: ~~May~~ June 2 , 2017

20

## CORN PURCHASE AND SALE AGREEMENT

**THIS CORN PURCHASE AND SALE AGREEMENT** ("**Agreement**") is effective August 29, 2016, by and between **BF Funding, LLC,** a North Carolina limited liability company ("**BFF**"), and Boersen Farms, Boersen Farms, Inc., Boersen Farms Grain , Boersen Farms Ag, LLC and affiliates; all Michigan legal entities(collectively "**Boersen**").

## R E C I T A L S :

A.     Boersen is in the business of growing and storing corn for eventual sale to ethanol producers and others.

B.     BFF is in the business of purchasing, warehousing and selling corn.

C.     BFF desires to purchase from Boersen, and Boersen desires to sell to BFF, harvested, dried and shelled corn (the "**Corn**"), upon the terms set forth herein.

D.     BFF desires for Boersen to store the Corn at Boersen's corn storage facilities for the Storage Period (as defined below).

E.     BFF desires to provide Boersen a subsequent first right, but not obligation, to repurchase  all of  the Corn pursuant to a mutually agreed Repurchase Schedule (as defined in Exhibit B) .

F.     If Boersen does not elect to repurchase the Corn according to the Repurchase Schedule, BFF may sell all of the Corn to any other buyer on terms acceptable to BFF and Boersen will fully assist with this third-party sale pursuant to the terms of this Agreement.

In consideration of the mutual promises, covenants, representations, warranties, and agreements contained in this Agreement, the mutual benefits to be derived therefrom, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in reliance upon the foregoing recitals of fact, the parties agree as follows:

1. Purchase of Corn by BFF.

(a)     BFF agrees to purchase from Boersen, and Boersen agrees to sell and provide to BFF, the Corn (each a "**Purchase**") for a price to be determined at the time of each sale (each a "**Purchase Price**") per bushel amount which is commercially recognized as weighing 56 pounds when fully loaded with Corn (each a "**Bushel**"). Each Purchase will be accompanied by a sales receipt in the form identified on Exhibit A to this Agreement, with all Purchases and the corresponding Purchase Prices identified on Exhibit B to this Agreement and which shall be updated as Purchases are made by BFF.   Pricing and terms are free on board ("F.O.B.") Boersen's facility.

(b)     Boersen will begin selling and BFF will begin purchasing Bushels as early as Tuesday, August 30, 2016 and the parties will continue selling and purchasing the Bushels until the earlier of: (i) October 30, 2016, (ii) the purchase of approximately 11,000,000 Bushels of Corn, (iii) Boersen elects to discontinue further sales to BFF, or (iv) BFF indicates it is unable to make additional Purchases.

1

(c)    The Purchase Price for each Bushel of Corn purchased will be paid by BFF to Boersen by electronic transfer of funds at the time of the sale and transfer of each Bushel of Corn pursuant to the Purchase. At the time of each Purchase, all Bushels sold to BFF by Boersen will be immediately identified in Boersen's computerized inventory system to indicate that they have been bought and paid for by BFF, stored in storage facilities of a type normally used by Boersen to store Corn long term and shall be deemed to be owned solely and exclusively by BFF. Boersen shall further mark each storage facility holding BFF Corn as being owned by BFF. Related records and reports will be provided to BFF by Boersen at the time of each sale and will otherwise be made available to BFF any time during normal working hours upon request by BFF.

(d)    All Corn purchased by BFF from Boersen shall be held and stored by Boersen at Boersen's storage facilities located and in amounts as identified on Exhibit C to this Agreement (the "**Holding Facilities**") which shall be updated on a continual basis to accurately reflect the amounts and locations of Corn stored by Boersen for BFF. Exhibit C shall be periodically verified in a manner acceptable to BFF, with related expenses payable by Boersen. Upon the prior written approval of BFF, Boersen may substitute Corn of comparable quality and in identical amounts for those sold to BFF. In consideration for BFF giving Boersen multiple options to repurchase the Corn according to Exhibit B, Boersen hereby expressly agrees to store the Corn without charge to BFF. Boersen expressly agrees that such options carry significant value and are at least of equal value to the storage costs associated with this transaction.

(e)    In addition to any other warranties provided hereunder, Boersen warrants that at the time of the Initial and subsequent Purchase(s), all of the Corn (i) will be free and clear of all liens and encumbrances whatsoever; and (ii) will be of the variety and of a type and quality standard for such Corn sold for subsequent ethanol production and as is normally delivered to Boersen's customers and which shall be verified by a third-party inspector selected by BFF and acceptable to Boersen (with Boersen to not unreasonably withhold its acceptance of the inspector), with related expenses payable by Boersen.

(f)    BFF acknowledges that Boersen is not a licensed grain dealer under the Grain Dealers Act of Michigan and is not authorized to issue warehouse receipts.

2.    <u>Storage Period</u>. Boersen as agent for BFF will store, hold and care for the Corn at the Holding Facilities through and until such time as (i) Boersen has repurchased the Corn from BFF pursuant to the terms of this Agreement, or (ii) BFF has sold the Corn to a third party (such period of time being referred to as the "**Storage Period**"). The Corn will be stored at the Holding Facilities during the Storage Period in a manner that is customary and standard for the optimum preservation and protection of the Corn. At all times during the Storage Period, Boersen will maintain property and casualty insurance covering the Holding Facilities and specifically covering the contents thereof, including the Corn, and such policy shall specify BFF as additional insured. Boersen will not move the Corn (and will not allow the Corn to be moved) during the Storage Period without the prior written approval of BFF.

3.    <u>Repurchase of Corn by Boersen</u>.

2

      (a)    Boersen may repurchase from BFF all of the Corn (the "**Repurchase Option**") for a price per Bushel to be determined at the time of each Purchase by BFF from Boersen (each a "**Repurchase Price**") that will be indicated on Exhibit A and Exhibit B. Repurchases by Boersen may be made according to the schedule identified on Exhibit D to this Agreement commencing September 15, 2016, and continuing through August 15, 2017. Exhibit B and Exhibit D will each be amended as necessary to reflect the actual number of Bushels purchased by BFF from Boersen. All Bushels repurchased by BFF from Boersen will have been repurchased by Boersen from BFF by August 15, 2017. If Boersen does not elect to repurchase the Corn at any time as indicated on Exhibit D, it will forfeit the Repurchase Option and BFF may unilaterally sell all of the remaining the Corn in any manner it deems appropriate.

      (b)    All of the Bushels repurchased by Boersen shall be paid by Boersen to BFF by wire transfer.

      4.    <u>Representations and Warranties of Boersen.</u>  In addition to the other express covenants, representations, warranties, and agreements contained herein, and as a condition precedent to the obligations of BFF under this Agreement, Boersen makes the following covenants, representations and warranties which shall be true and correct as of the date hereof and which shall survive the execution, expiration, termination and/or cancellation of this Agreement:

      (a)    At of the time of transfer of the Corn pursuant to each Purchase, Boersen shall have good and marketable title to all of the Corn, free and clear of any liens, security interests or other encumbrances whatsoever. Boersen warrants that, other than as provided for under the terms of this Agreement, neither Boersen nor any other person or entity, will have any claim, right, title or interest in or to the Corn upon consummation of each Purchase.

      (b)    At the time of each Purchase and throughout the time of the Storage Period, all delivered Corn shall be and remain (i) of good quality, suitable for resale and consumption by consumers in the United States, and (ii) free from disease, spoilage, rot, insects or other contamination by vermin, or other defects or infirmities.

      (c)    Boersen is in sound financial condition, is fully able to pay its debts as they become due, and has no intention of filing bankruptcy now or at any time during the term of this Agreement. The execution, delivery and performance of this Agreement by Boersen (i) will not, and is not being made with any intent to, hinder, delay or defraud its creditors, and (ii) does not constitute any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law.

      (d)    There are no security interests whatsoever, and no additional security interests whatsoever will be granted during the term of this Agreement, in any of the Corn, except as necessary related to financing BFF may undertake (as such terms are defined under the North Carolina Uniform Commercial Code).

      (e)    [Intentionally Omitted]

      (f)    Boersen has all requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby. The execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby,

have been duly and validly authorized by all necessary corporate action on the part of Boersen, duly executed and delivered by Boersen, and constitutes a valid and binding obligation of Boersen, enforceable against Boersen in accordance with its terms.

(g)     The execution, delivery and performance of this Agreement do not and will not: (i) violate any law or any rule or regulation of any governmental body or administrative agency, or conflict with any judicial or administrative order or decree relating to Boersen or the Corn; (ii) constitute a breach or default under any agreement or instrument by which Boersen is bound or the Corn are affected; or (iii) create any lien or other encumbrance on any of the Corn.

(h)     No representation, warranty or statement made by Boersen in this Agreement, or any document furnished or to be furnished to BFF pursuant to this Agreement, contains or will contain any untrue statement of a material fact, or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

(i)     At all times that the Corn is in the possession of Boersen (including, without limitation, the Storage Period), Boersen shall keep and maintain the Corn free from any and all claims, encumbrances and/or liens, and shall keep, preserve and maintain the Corn in accordance with the terms of this Agreement.

5.  Default.  Without limiting any other rights or remedies which might be available at law or equity, each of the following events shall constitute an event of default (an "**Event of Default**") under the terms of this Agreement, and Boersen shall give BFF immediate written notice thereof: (a) any warranty, representation, statement, report or certificate made or delivered to BFF by Boersen, now or in the future, shall be untrue or misleading in a material respect; or (b) breach by Boersen of any representation, warranty or covenant contained in this Agreement; or (c) failure by Boersen to comply with any term, condition or obligation contained in this Agreement; (d) in the event that Boersen becomes insolvent, makes an assignment for the benefit of its creditors, or all, or substantially all, of Boersen's assets are placed in the hands of a receiver or trustee and such receivership or trusteeship continues for a period of thirty (30) days, or should Boersen institute any proceedings under any law in any jurisdiction relating to bankruptcy or insolvency seeking relief, whether discharge of debt, liquidation, or reorganization, or should any involuntary proceeding be filed against Boersen under any such bankruptcy laws, or any analogous events in any jurisdiction, and such proceeding is not discharged or removed within sixty (60) days thereafter; or (e) if Boersen (i) fails to pay any amount due, under any loan, guarantee or security agreement, on the due date or within any applicable grace period; or (ii) defaults under any other term of any loan, guarantee or security agreement to which it is a party which would allow (assuming the giving of appropriate notice if required) the holder or holders of such loan, guarantee or security to accelerate such obligation.

6.     Remedies.  Without limiting any other rights or remedies which might be available at law or equity, upon the occurrence and during the continuance of any Event of Default, and at any time thereafter, BFF, at its option, and after notice and demand, may do any one or more of the following:

(a)     Take possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of,

4

keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of like kind and amount collateral by Boersen should BFF need to take possession of collateral.

(b)     Sell or otherwise dispose of any of the Corn, in which event Boersen shall be liable for any and all costs associated with such sale or dispossession, including, without limitation, the costs of storage pending sale. BFF shall have the right to conduct such sales on Boersen's premises without charge, for such time or times as BFF deems reasonable.

(c)     Avail itself of any and all other rights and remedies available under applicable laws, including, without limitation, those available under the laws of the State of Michigan.

Exercise or partial exercise by BFF of one or more of its rights or remedies shall not be deemed an election, nor bar BFF from subsequent exercise or partial exercise of any other rights or remedies. The failure or delay of BFF to exercise any rights or remedies shall not operate as a waiver thereof, and all rights and remedies shall continue in full force and effect until all of the obligations of Boersen have been fully paid and performed.

7.     Governing Law; Venue; Dispute Resolution.   Except as otherwise provided herein, this Agreement shall be subject to the National Grain and Feed Association Grain Trade Rules, which are incorporated herein. The parties agree that the sole remedy for resolution of any and all disagreements or disputes arising under or related to this Agreement (including, but not limited to, any statutory or tort claims arising from the relationship between the parties) shall be through arbitration proceedings before the National Grain and Feed Association (NGFA) pursuant to the NGFA® Arbitration Rules without the necessity of court order, provided further that BFF consents to enforcement of the obligation to arbitrate disputes in any state or federal court and expressly waives the defenses of personal jurisdiction and venue with respect to any such action. The decision and award determined through arbitration shall be final and binding upon the parties. Judgment upon the arbitration award may be entered and enforced in any court having jurisdiction thereof. The parties agree that any arbitration conducted hereunder shall be governed by the Federal Arbitration Act, 9 United States Code §§ 1-16, as now existing or hereinafter amended. It is the intent of the parties that any continuing dispute which cannot be settled by mutual understanding between the parties, shall be initially submitted to a senior official of each party to be designated by them. Such persons shall meet promptly and use their best efforts to resolve the dispute. Such persons shall also determine whether or not they wish to retain the services of an independent mediator to assist in resolving such dispute. Unless the parties otherwise agree, meetings to resolve disputes shall be held in the office of the party which did not submit the dispute. Should such dispute not be resolved, as provided, within 30 days of submission to the designated persons, at the written request of either party, the dispute shall be resolved in accordance with this Section.   Notwithstanding any other provision of this Agreement, including this Section, each party shall have the right, at any time to apply to any court of competent jurisdiction for preliminary relief.

5

·8.  Underline{Miscellaneous.}

(a)    Notice.    Any notice, demand, request, or other communication or document to be provided under this Agreement to a party to this Agreement ("Notice") shall be in writing, and shall be given to the party at its address or telecopy number set forth below, or to such other address or telecopy number as the party may later specify for that purpose by notice to the other party.  Each Notice shall be deemed given and received:  (i) if given by email or facsimile, when the email or facsimile is transmitted and confirmation of complete receipt is received by that transmitting party during normal business hours or on the next business day if not confirmed during normal business hours; (ii) if hand delivered or given by overnight delivery service, the day on which the notice is actually received by the party; or (iii) if given by normal or certified U.S. mail, two (2) business days after it is posted with the U.S. Postal Service.

If to BFF:        BF Funding, LLC
                  100 Elks Club Road
                  Brevard, NC 28712
                  Àttn:  Craig Gilmore
                  Email: cgilmore@carofin.com
                  Fax:  (828) 883-4402


If to Boersen:    Boersen Farms, Inc.
                  6241 Ransom St.
                  Zeeland, Michigan 49464
                  Attn: Dennis Boersen
                  Email: boersenfarms@centurytel.net
                  Fax:  (616) 875-7882

(b)    Entire Agreement; Modification.    This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all other prior understandings, correspondence and agreements, oral or written, between them. This Agreement may not be altered, amended, or modified in any way except by a written modification signed by all parties.

(c)    Waiver.    None of the terms or provisions of this Agreement shall be deemed waived except by a writing signed by the party which is entitled to the benefits thereof. The failure of any party to require performance of any provision hereof shall in no manner affect such party's right at a later time to enforce the same.  The waiver by a party of any provision hereof shall not be deemed to be a continuing waiver of any such provision or a waiver of any other provision hereof.

(d)    Assignment.    This Agreement is binding upon and shall inure to the benefit of the parties and their permitted successors and assigns.   This Agreement is not assignable by any party, directly or indirectly, in whole or in part, without the prior written consent of the other party.

(e)    Interpretation of Agreement.    The section and other headings in this Agreement are inserted solely as a matter of convenience and for reference, and shall be given no

effect in the construction or interpretation of this Agreement. Unless the context of this Agreement otherwise clearly requires, references in the plural form include the singular and in the singular form include the plural. This Agreement has been freely negotiated by all parties and in the event there is any controversy, dispute, or claim involving the meaning, interpretation, validity, or enforceability of this Agreement or any of its terms or conditions, there shall be no inference, presumption, or conclusion drawn against a party by virtue of such party having drafted this Agreement or any portion hereof.

(f)     Severability. Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction and the provision that is prohibited or unenforceable shall be reformed or modified to reflect the parties' intent to the maximum extent permitted by applicable legal requirements.

(g)     Survival. The provisions of Sections 4, 5, 6, 7, and 8 hereof, and any other provisions of this Agreement to be performed after such expiration or termination, shall survive the expiration or termination of this Agreement regardless of cause.

(h)     Independent Contractors. Each of the parties hereto is an independent contractor and engages in the operation of its own business, and neither party hereto is or shall be considered to be the agent of the other party for any purpose whatsoever, and neither party has an authorization to enter into any contracts or assume any obligations for the other party or make any warranties or representations on behalf of the other party, other than is authorized herein, and nothing in this Agreement shall be construed to establish a relationship of co-partner or joint venturer between the parties.

(i)     Further Assurances. The parties agree that each shall, at its own expense, at any time and from time to time after the date hereof, upon the other's request, do, execute, acknowledge and deliver all such further acts, assignments, transfers, conveyances and assurances as may be reasonably required to carry out the intent of this Agreement.

(j)     Best Efforts; Time of the Essence. Each party agrees to use its best efforts to satisfy the conditions set forth in this Agreement and otherwise to consummate the transactions contemplated by this Agreement. Each party agrees that time is of the essence of this Agreement.

(k)     Execution and Counterparts. This Agreement may be executed in multiple counterparts, which taken together shall constitute an original without the necessity of all parties signing the same page or the same documents, and may be executed by signatures to electronically or telephonically transmitted counterparts in lieu of original printed or photocopied documents. Signatures transmitted by facsimile shall be considered original signatures.

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

BFF FUNDING, LLC

By: _____

Name: CFG Financial Services, LLC/Bruce Roberts

Its: Manager


BOERSEN FARMS, INC.

By: _____

Name: Dennis Boersen

Its: President

Exhibit A: Corn Purchase Receipt

# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

| RECEIPT NO. | _____ |
|---|---|
| DATE | August 31, 2016 |
| CUSTOMER ID | _____ |

SOLD TO     BF Funding, LLC

              100 Elks Club Road
              Brevard, NC 28712
              828.393.0088

This receipt is part of that certain BF Purchase and Sale Agreement dated 8.31.2016 by and between BF Funding, LLC and Boersen Farms, Boersen Farms, Inc., Boersen Farms Grain, Boersen Farms Ag, LLC and its affiliates:

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

|  | TOTAL DISCOUNT | |
|---|---|---|
| | SUBTOTAL | |
| | SALES TAX | |
| | TOTAL | |

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|------|---------------|---------------------------|----------------------|--------------------------------------|
| 8/31/2016 | $2.4606 | 10,299,080 | $25,341,411.57 | |
| 9/15/2016 | | 46,988 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 93,804 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 96,925 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 93,804 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 96,925 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 1,453,084 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 1,431,237 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 1,425,441 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 1,409,836 | | $2.90/15-May-17 |
| 6/15/2017 | | 1,397,798 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 1,383,084 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 1,370,154 | | $2.90/15-Aug-17 |

Exhibit C: Holding Facilities

| Location | Bushels of Corn Stored | Inspection Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 46,988 | $136,264.58 |
| 10/15/2016 | 93,804 | $272,029.15 |
| 11/15/2016 | 96,925 | $281,080.12 |
| 12/15/2016 | 93,804 | $272,029.15 |
| 1/15/2017 | 96,925 | $281,080.12 |
| 2/15/2017 | 1,453,084 | $4,213,942.85 |
| 3/15/2017 | 1,431,237 | $4,150,586.05 |
| 4/15/2017 | 1,425,441 | $4,133,777.10 |
| 5/15/2017 | 1,409,836 | $4,088,522.24 |
| 6/15/2017 | 1,397,798 | $4,053,611.35 |
| 7/15/2017 | 1,383,084 | $4,010,942.48 |
| 8/15/2017 | 1,370,154 | $3,973,445.60 |

12



M-51 Bins: 63600 M-51 Paw Paw, MI 49079

| Key | Diameter | Rings Total | Rings of Grain | Cone Up/Down | Commodity | Bushels |
|---|---|---|---|---|---|---|
| #1-Bin 1 | 105' | 34 | 33.5 | Down | Corn | 680,000 |
| #2-Bin 2 | 105' | 34 | 33.5 | Down | Corn | 680,000 |
| #3-Bin 3 | 105' | 34 | 13 | Down | Corn | 252,202 |
| #4-Bin 4 | 105' | 34 | 26 | Down | Corn | 523,944 |
| #5-Bin 5 (not pictured) | 105' | 34 | 33 | Up | Corn | 716,507 |
| #6-Wet Bin 1 | 36' | 22 | 3 | Up | Corn | Empty |
| #7-Wet Bin 2 | 36' | 26 | 24.5 | Up | Corn | 54,775 |
| #8-Wet Bin 3 | 36' | 26 | 23 | Down | Corn | 51,415 |
| #9-Overhead Loadout | 24' | 18 | 17 | Up | Corn | 17,000 |
| #10-Dryer 1 | | | | | | |
| #11-Dryer 2 | | | | | | |
| #12-Dryer 3 | | | | | | |
| #13-Electrical Room/Pit | . | | | | | |





**Boersen Farms, Inc.**

# SALES RECEIPT

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   1
DATE   September 6, 2016
CUSTOMER ID   _____

SOLD TO    BF Funding, LLC

100 Elks Club Road,
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 232,163.90 | | Bushels of # 2 Yellow Corn | $ 2.44 | | $ 566,545.19 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | |
|---|---|---|
| TOTAL DISCOUNT | | |
| SUBTOTAL | $ | 566,545.19 |
| SALES TAX | | |
| TOTAL | $ | 566,545.19 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/6/2016 | $2.44 | 232,164 | $566,545.19 | |
| 9/15/2016 | | 638 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 2,118 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 2,189 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 2,118 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 2,189 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 32,815 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 32,322 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 32,191 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 31,839 | | $2.90/15-May-17 |
| 6/15/2017 | | 31,567 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 31,235 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 30,943 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 638 | $1,851.11 |
| 10/15/2016 | 2,118 | $6,143.51 |
| 11/15/2016 | 2,189 | $6,347.91 |
| 12/15/2016 | 2,118 | $6,143.51 |
| 1/15/2017 | 2,189 | $6,347.91 |
| 2/15/2017 | 32,815 | $95,164.48 |
| 3/15/2017 | 32,322 | $93,733.68 |
| 4/15/2017 | 32,191 | $93,354.08 |
| 5/15/2017 | 31,839 | $92,332.08 |
| 6/15/2017 | 31,567 | $91,543.68 |
| 7/15/2017 | 31,235 | $90,580.08 |
| 8/15/2017 | 30,943 | $89,733.28 |

12



# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   2
DATE   September 9, 2016
CUSTOMER ID   _____

SOLD TO       BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 280,276 | | Bushels of #2 Yellow Corn | $       2.44 | | $   ·  683,295.86 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

|  |  |
|---|---|
| SUBTOTAL | $      683,295.86 |
| SALES TAX | |
| TOTAL | $      683,295.86 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/9/2016 | $2.44 | 280,276 | $683,295.86 | |
| 9/15/2016 | | 516 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 2,560 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 2,645 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 2,560 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 2,645 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 39,652 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 39,056 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 38,898 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 38,472 | | $2.90/15-May-17 |
| 6/15/2017 | | 38,143 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 37,742 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 37,389 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 516 | $1,495.81 |
| 10/15/2016 | 2,560 | $7,423.40 |
| 11/15/2016 | 2,645 | $7,670.39 |
| 12/15/2016 | 2,560 | $7,423.40 |
| 1/15/2017 | 2,645 | $7,670.39 |
| 2/15/2017 | 39,652 | $114,990.41 |
| 3/15/2017 | 39,056 | $113,261.53 |
| 4/15/2017 | 38,898 | $112,802.85 |
| 5/15/2017 | 38,472 | $111,567.93 |
| 6/15/2017 | 38,143 | $110,615.28 |
| 7/15/2017 | 37,742 | $109,450.93 |
| 8/15/2017 | 37,389 | $108,427.72 |



# SALES RECEIPT

## Boersen Farms, Inc.

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   3
DATE   September 21, 2016
CUSTOMER ID   _____

SOLD TO   BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale Agreement dated 8.31.2016 by and between BF Funding, LLC and Boersen Farms, Boersen Farms, Inc., Boersen Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 19,260 | | Bushels of #2 Yellow Corn | $    2.40 | | $    46,213.67 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL DISCOUNT | | | |

SUBTOTAL $    46,213.67
SALES TAX
TOTAL $    46,213.67

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|------|----------------|---------------------------|----------------------|--------------------------------------|
| 9/21/2016 | $2.3995 | 19,260 | $46,213.67 | |
| 10/15/2016 | | 143 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 182 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 177 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 182 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 2,735 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 2,693 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 2,683 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 2,653 | | $2.90/15-May-17 |
| 6/15/2017 | | 2,631 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 2,603 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 2,579 | | $2.90/15-Aug-17 |

10

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 143 | $413.33 |
| 11/15/2016 | 182 | $528.99 |
| 12/15/2016 | 177 | $511.96 |
| 1/15/2017 | 182 | $528.99 |
| 2/15/2017 | 2,735 | $7,930.37 |
| 3/15/2017 | 2,693 | $7,811.14 |
| 4/15/2017 | 2,683 | $7,779.50 |
| 5/15/2017 | 2,653 | $7,694.34 |
| 6/15/2017 | 2,631 | $7,628.64 |
| 7/15/2017 | 2,603 | $7,548.34 |
| 8/15/2017 | 2,579 | $7,477.77 |

12

# SALES RECEIPT

## Boersen Farms, Inc.

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   4
DATE   September 26, 2016
CUSTOMER ID   _____

SOLD TO      BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 19,231.44 | | Bushels of #2 Yellow Corn | $    2.51 | | $    48,336.50 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

| | |
|---|---|
| SUBTOTAL | $    48,336.50 |
| SALES TAX | |
| TOTAL | $    48,336.50 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/26/2016 | $2.5134 | 19,231 | $48,336.50 | |
| 10/15/2016 | | 114 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 182 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 177 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 182 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 2,735 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 2,693 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 2,683 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 2,653 | | $2.90/15-May-17 |
| 6/15/2017 | | 2,631 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 2,603 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 2,579 | | $2.90/15-Aug-17 |

1

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|------|------|------|
| 10/15/2016 | 114 | $331.13 |
| 11/15/2016 | 182 | $528.99 |
| 12/15/2016 | 177 | $511.96 |
| 1/15/2017 | 182 | $528.99 |
| 2/15/2017 | 2,735 | $7,930.37 |
| 3/15/2017 | 2,693 | $7,811.14 |
| 4/15/2017 | 2,683 | $7,779.50 |
| 5/15/2017 | 2,653 | $7,694.34 |
| 6/15/2017 | 2,631 | $7,628.64 |
| 7/15/2017 | 2,603 | $7,548.34 |
| 8/15/2017 | 2,579 | $7,477.77 |

3



# SALES RECEIPT

**Boersen Farms, Inc,**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   5
DATE   September 29, 2016
CUSTOMER ID   _____

SOLD TO     BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 192,144 | | Bushels of #2 Yellow Corn | $   2.46 | | $   471,980.29 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

| | |
|---|---|
| SUBTOTAL | $   471,980.29 |
| SALES TAX | |
| TOTAL | $   471,980.29 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/28/2016 | $2.4564 | 192,144 | $471,980.29 | |
| 10/15/2016 | | 972 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 1,824 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 1,765 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 1,824 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 27,346 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 26,935 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 26,826 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 26,532 | | $2.90/15-May-17 |
| 6/15/2017 | | 26,306 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 26,029 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 25,785 | | $2.90/15-Aug-17 |

1

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 972 | $2,818.19 |
| 11/15/2016 | 1,824 | $5,289.89 |
| 12/15/2016 | 1,765 | $5,119.56 |
| 1/15/2017 | 1,824 | $5,289.89 |
| 2/15/2017 | 27,346 | $79,303.70 |
| 3/15/2017 | 26,935 | $78,111.37 |
| 4/15/2017 | 26,826 | $77,795.04 |
| 5/15/2017 | 26,532 | $76,943.37 |
| 6/15/2017 | 26,306 | $76,286.37 |
| 7/15/2017 | 26,029 | $75,483.37 |
| 8/15/2017 | 25,785 | $74,777.71 |

3



# SALES RECEIPT

## Boersen Farms, Inc.

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO. 6
DATE September 30, 2016
CUSTOMER ID _____

SOLD TO     BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK.NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 57,626.29 | | Bushels of #2 Yellow Corn | $    2.42 | | $    139,220.50 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL DISCOUNT | | | |

| | | |
|---|---|---|
| SUBTOTAL | $ | 139,220.50 |
| SALES TAX | | |
| TOTAL | $ | 139,220.50 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/30/2016 | $2.4159 | 57,626 | $139,220.50 | |
| 10/15/2016 | | 275 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 547 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 530 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 547 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 8,204 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 8,080 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 8,048 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 7,960 | | $2.90/15-May-17 |
| 6/15/2017 | | 7,892 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 7,809 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 7,736 | | $2.90/15-Aug-17 |

1

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 275 | $796.14 |
| 11/15/2016 | 547 | $1,586.97 |
| 12/15/2016 | 530 | $1,535.87 |
| 1/15/2017 | 547 | $1,586.97 |
| 2/15/2017 | 8,204 | $23,791.11 |
| 3/15/2017 | 8,080 | $23,433.41 |
| 4/15/2017 | 8,048 | $23,338.51 |
| 5/15/2017 | 7,960 | $23,083.01 |
| 6/15/2017 | 7,892 | $22,885.91 |
| 7/15/2017 | 7,809 | $22,645.01 |
| 8/15/2017 | 7,736 | $22,433.31 |

3

TRUE COPY

JUN 0 2 2017

Van Buren County Clerk

# CLARK HILL

Charles A. Lawler
T 517.318.3016
F 517.318.3069
Email: clawler@clarkhill.com

Clark Hill PLC
212 East Grand River Avenue
Lansing, MI 48906
T 517.318.3100
F 517.318.3099

clarkhill.com

June 8, 2017

**VIA FED EX OVERNIGHT**

Boersen Farms, Inc.
Attn:  Sandra Boersen
            Resident Agent
6241 Ransom St.
Zeeland, Michigan  49464

Re:    *BF Funding, LLC v Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen
         Farms & affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and
         affiliated companies, Dennis Boersen, and CHS Capital, LLC*
         Case No. 17- 067245-CB

Dear Ms. Boersen:

Enclosed for your information are the following documents that were filed with the V an
Buren County Circuit Court on June 2, 2017 in the above-referenced matter:

- June 5, 2017 Order Granting Plaintiff's *Ex Parte* Motion for Temporary
  Restraining Order, Order to Show Cause and Order for Possession Pending Final
  Judgment  [**Show Cause Hearing is Scheduled for Wednesday, June 14, 2017
  at 2:30 P.M.**];

- Summons and Verified Complaint with Exhibits A-B, attached;

- Plaintiff's Verified *Ex Parte* Motion for Temporary Restraining Order, Order to
  Show Cause, Preliminary Injunction and Motion for Possession Pending Final
  Judgment with Exhibits A-D, attached; and

- Brief in Support of Plaintiff's Motion.

<u>VIA FED EX OVERNIGHT</u>

Boersen Farms, Inc.
Attn:  Sandra Boersen
        Resident Agent
June 8, 2017
Page 2

Respectfully,

CLARK HILL, PLC

Charles A. Lawler

CAL :kmt
Enclosures

cc:      BF Funding, LLC

STATE OF MICHIGAN

IN THE 36TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

BF FUNDING, LLC,
a North Carolina limited liability company,

      Plaintiff,

v

BOERSEN FARMS, INC., BOERSEN FARMS
AG, LLC, BOERSEN FARMS &
AFFILIATES, LLC, BOERSEN AG
PARTNERS, LLC, BOERSEN LAND CO
LLC, and affiliated companies, DENNIS
BOERSEN, and CHS CAPITAL, LLC.

      Defendants.

Case No.: 17-        -CB

Hon.        O67245

**BUSINESS COURT CASE**
This case qualifies as a business or
commercial dispute as defined by MCL
600.8031 and should be assigned to the
Business Court Docket.

---

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
Clark Hill PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiff, BF Funding, LLC

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THERE IS NO OTHER PENDING OR
RESOLVED CIVIL ACTION ARISING
OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN THE
COMPLAINT
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

## PLAINTIFF'S VERIFIED *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, PRELIMINARY INJUNCTION AND MOTION FOR POSSESSION PENDING FINAL JUDGMENT

Plaintiff, BF Funding, LLC ("BF Funding" and/or "Plaintiff"), by and through its

attorneys, Clark Hill PLC, for its Verified *Ex Parte* Motion for Temporary Restraining Order,

Order to Show Cause, Preliminary Injunction and Motion for Possession Pending Final

Judgment, pursuant to MCR 3.105 and MCR 3.310 against Boersen Farms, Inc., Boersen Farms

AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co,

LLC, and affiliated companies (collectively referred to as "Boersen Farms" and/or "Boersen"),

215850259.1 58332/316093

Dennis Boersen ("D. Boersen") and CHS Capital, LLC ("CHS") (collectively the "Defendants")

states as follows:

1.      Defendants Boersen Farms is in the business of growing and storing corn for

eventual sale to ethanol producers and others.

2.      BF Funding is in the business of purchasing, warehousing and selling corn.

3.      BF Funding entered into a purchase and sale agreement ("Purchase Agreement")

with Boersen Farms on August 29, 2016 for the purchase of up to 11,000,000 Bushels of

harvested, dried and shelled corn ("Corn"). (See Corn Purchase and Sale Agreement attached as

Exhibit A).

4.      Pursuant to the Purchase Agreement, Boersen Farms agreed to store the Corn at

Boersen Farms' storage facilities, located at 63600 M-51, Paw Paw, Michigan   49079, aka

43348 64th Ave, Paw Paw, Michigan 49079 ("Storage Facilities").

5.      Boersen Farms was able to re-purchase Corn from BF Funding pursuant to certain

terms and conditions in the Purchase Agreement.

6.      Boersen Land Co LLC owns/owned the property on which the Storage Facility is

located.

7.      Boersen Farms agreed to maintain the property and casualty insurance covering

the Storage Facility and Corn, and that the policy would name BF Funding as an additional

insured. (Exhibit A)

8.      Pursuant to the Purchase Agreement, Boersen Farms warranted that all Corn

would be free of all liens and encumbrances. (Exhibit A)

9.      Boersen Farms ensured BF Funding that, it had good and marketable title to all of

the Corn, free and clear of any liens, security interests, or other encumbrances. (Exhibit A)

10.     Boersen Farms agreed that no other security interest against the Corn would be granted during the term of the Purchase Agreement. (Exhibit A)

11.     Pursuant to 7 US 1631(d), "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest."

12.     Because BF Funding did not receive written notice of a security interest in the Corn one year before the purchase of the Corn, BF Funding purchased the Corn free from any security interests.

13.     BF Funding received a letter on or about October 3, 2016 from CHS Capital, LLC ("CHS"), stating that future payments must be made payable to CHS.

14.     BF Funding ceased purchasing Corn from Boersen Farms after receipt of the letter from CHS.

15.     Boersen Farms failed to respond to BF Funding's inquiries regarding the CHS debt and alleged assignment.

16.     Boersen Farms acquiesced in the ceasing of purchase orders.

17.     BF Funding purchased 800,701.63 bushels of Corn pursuant to the Purchase Agreement.  (See Sales Receipts attached as Exhibit B)

18.     Boersen Farms exercised its Repurchase Option on 29,804 bushels.

19.     Although BF Funding provided Boersen Farms multiple opportunities to re-purchase Corn, Boersen Farms failed to exercise any further Repurchase Options.

20.     Beginning April 7, 2017, BF Funding began selling the purchased Corn to a third party.

21.     Through May 4, 2017, BF Funding obtained 492,097.16 bushels of its Corn from Boersen Farms' silos.

22.     278,800.47 bushels of Corn purchased by BF Funding remains in the possession of Boersen Farms and/or CHS, and are being stored at the Storage Facility located at 63600 M-51, Paw Paw, Michigan 49079, aka 43348 64th Ave, Paw Paw, Michigan 49079, and/or other storage facilities owned, operated, or used by Boersen Farms and/or CHS.

23.     Upon information and belief, Boersen Farms conveyed certain real property to CHS, which may include the storage facilities at which BF Funding's Corn is being stored.

24.     The 278,800.47 bushels of Corn owned by BF Funding which remain in the possession of Boersen Farms and/or CHS is valued at $986,953.66 (based on Cargill's May 30, 2017 price of $3.54/bushel at its Decatur, Michigan facility).

25.     The Purchase Agreement provides that BF Funding may "[t]ake possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of, keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of the like kind and amount collateral by Boersen should BFF need to take possession of collateral." (Exhibit A)

26.     Pursuant to the Purchase Agreement, BF Funding also has the right to sell its Corn and conduct a sale of the Corn on Boersen Farms' property.

27.     The 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities, are BF Funding's property.

28.     Neither Boersen Farms nor CHS have permitted BF Funding to take possession of the 278,800.47 bushels of BF Funding's Corn.

29.     Neither Boersen Farms nor CHS has any rights or interest in the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities.

30.     Neither Boersen Farms nor CHS have any right to transfer, sell, convey, encumber, or remove BF Funding's 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

31.     Upon information and belief, Boersen Farms and/or CHS continue to operate the farming entities, its business, purchasing and selling Corn, and proceeds of sales of Corn are held by Defendants.

32.     BF Funding will suffer immediate and irreparable injury if Defendants are permitted to dispose of the Corn, proceeds of Corn, or other assets of the Defendants prior to the resolution of this case.

33.     BF Funding may also suffer immediate and irreparable injury if the Corn is not properly cared for or there is a diminution of value due to the changing market price of Corn or the quality of the Corn.

34.     This Motion is also supported by BF Funding's Verified Complaint filed in this matter. (See Verified Complaint, attached as Exhibit C)

WHEREFORE Plaintiff, BF Funding, LLC, for the reasons stated in this Motion and in the Brief filed contemporaneously with this Motion, respectfully requests that this Court grant its

*Ex Parte* Motion and enter the *Ex Parte* Temporary Restraining Order, Order to Show Cause and

Order for Possession Pending Final Judgment, in the form attached as Exhibit D hereto, granting

Plaintiff the following relief:

    A.    Issue a Temporary Restraining Order to enjoin Defendants from: (1) disposing of any of the Corn or proceeds of said Corn; (2) disposing of other assets of Defendants;

    B.    Issue a Show Cause Order scheduling a hearing date on an expedited basis at which time Defendants must appear and show cause why a preliminary injunction should not be issued while the case is pending;

    C.    Issue an order requiring Defendants to refrain from using, expending, destroying, concealing, or disposing the Corn, or drawing checks or other charges against any accounts holding proceeds of Defendants' sale of Corn, until further order of the Court;

    D.    Enter an Order determining that 278,800.47 bushels of Corn and/or proceeds of said Corn are the property of BF Funding and ordering the Corn and/or proceeds to be transferred to Plaintiff;

    E.    Order Defendants to produce all evidence that any funds held in accounts maintained by Defendants are not proceeds of the sale of the Corn;

    F.    Award Plaintiff all other interim and final relief, including monetary damages, costs, and attorney fees, as the Court finds equitable and just.

## Verification

Bruce Roberts, being duly sworn, states as follows:

1.     I have reviewed the foregoing Motion.

2.     I have personal knowledge of the facts set forth in the Motion.

3.     The facts and statements contained within the Motion are true to the best of my knowledge, information and belief.

Date: June ____, 2017

_____
Bruce Roberts, Manager of Carolina Financial Group, LLC, Managing Member of BF Funding LLC.

Subscribed and sworn to before me this _____ day of June, 2017.

_____, Notary Public
_____ County, North Carolina.
Acting in _____ County, North Carolina.
My Commission Expires: _____

```
JANE STAMEY
Notary Public – North Carolina
Transylvania County
My Commission Expires Apr 25, 2022
```

Respectfully submitted,

CLARK HILL PLC

By: _____
Charles A. Lawler (P65164)
Brian P. Lick (P71577)
212 East Grand River Avenue
Lansing, Michigan  48906
(517) 318-3100
Attorneys for Plaintiffs

Dated:  June ____, 2017

## CORN PURCHASE AND SALE AGREEMENT

THIS CORN PURCHASE AND SALE AGREEMENT ("**Agreement**") is effective August 29, 2016, by and between **BF Funding, LLC**, a North Carolina limited liability company ("**BFF**"), and Boersen Farms, Boersen Farms, Inc., Boersen Farms Grain , Boersen Farms Ag, LLC and affiliates; all Michigan legal entities(collectively "**Boersen**").

### R E C I T A L S:

A.      Boersen is in the business of growing and storing corn for eventual sale to ethanol producers and others.

B.      BFF is in the business of purchasing, warehousing and selling corn.

C.      BFF desires to purchase from Boersen, and Boersen desires to sell to BFF, harvested, dried and shelled corn (the "**Corn**"), upon the terms set forth herein.

D.      · BFF desires for Boersen to store the Corn at Boersen's corn storage facilities for the Storage Period (as defined below).

E.      BFF desires to provide Boersen a subsequent first right, but not obligation, to repurchase all of the Corn pursuant to a mutually agreed Repurchase Schedule (as defined in Exhibit B) .

F.      If Boersen does not elect to repurchase the Corn according to the Repurchase Schedule, BFF may sell all of the Corn to any other buyer on terms acceptable to BFF and Boersen will fully assist with this third-party sale pursuant to the terms of this Agreement.

In consideration of the mutual promises, covenants, representations, warranties, and agreements contained in this Agreement, the mutual benefits to be derived therefrom, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in reliance upon the foregoing recitals of fact, the parties agree as follows:

1.  Purchase of Corn by BFF.

(a)      BFF agrees to purchase from Boersen, and Boersen agrees to sell and provide to BFF, the Corn (each a "**Purchase**") for a price to be determined at the time of each sale (each a "**Purchase Price**") per bushel amount which is commercially recognized as weighing 56 pounds when fully loaded with Corn (each a "**Bushel**"). Each Purchase will be accompanied by a sales receipt in the form identified on Exhibit A to this Agreement, with all Purchases and the corresponding Purchase Prices identified on Exhibit B to this Agreement and which shall be updated as Purchases are made by BFF.   Pricing and terms are free on board ("F.O.B.") Boersen's facility.

(b)      Boersen will begin selling and BFF will begin purchasing Bushels as early as Tuesday, August 30, 2016 and the parties will continue selling and purchasing the Bushels until the earlier of: (i) October 30, 2016, (ii) the purchase of approximately 11,000,000 Bushels of Corn,  (iii) Boersen elects to discontinue further sales to BFF, or (iv) BFF indicates it is unable to make additional Purchases.

1

(c)     The Purchase Price for each Bushel of Corn purchased will be paid by BFF to Boersen by electronic transfer of funds at the time of the sale and transfer of each Bushel of Corn pursuant to the Purchase. At the time of each Purchase, all Bushels sold to BFF by Boersen will be immediately identified in Boersen's computerized inventory system to indicate that they have been bought and paid for by BFF, stored in storage facilities of a type normally used by Boersen to store Corn long term and shall be deemed to be owned solely and exclusively by BFF. Boersen shall further mark each storage facility holding BFF Corn as being owned by BFF. Related records and reports will be provided to BFF by Boersen at the time of each sale and will otherwise be made available to BFF any time during normal working hours upon request by BFF.

(d)     All Corn purchased by BFF from Boersen shall be held and stored by Boersen at Boersen's storage facilities located and in amounts as identified on Exhibit C to this Agreement (the "**Holding Facilities**") which shall be updated on a continual basis to accurately reflect the amounts and locations of Corn stored by Boersen for BFF. Exhibit C shall be periodically verified in a manner acceptable to BFF, with related expenses payable by Boersen. Upon the prior written approval of BFF, Boersen may substitute Corn of comparable quality and in identical amounts for those sold to BFF. In consideration for BFF giving Boersen multiple options to repurchase the Corn according to Exhibit B, Boersen hereby expressly agrees to store the Corn without charge to BFF. Boersen expressly agrees that such options carry significant value and are at least of equal value to the storage costs associated with this transaction.

(e)     In addition to any other warranties provided hereunder, Boersen warrants that at the time of the Initial and subsequent Purchase(s), all of the Corn (i) will be free and clear of all liens and encumbrances whatsoever; and (ii) will be of the variety and of a type and quality standard for such Corn sold for subsequent ethanol production and as is normally delivered to Boersen's customers and which shall be verified by a third-party inspector selected by BFF and acceptable to Boersen (with Boersen to not unreasonably withhold its acceptance of the inspector), with related expenses payable by Boersen.

(f)     BFF acknowledges that Boersen is not a licensed grain dealer under the Grain Dealers Act of Michigan and is not authorized to issue warehouse receipts.

2.     Storage Period. Boersen as agent for BFF will store, hold and care for the Corn at the Holding Facilities through and until such time as (i) Boersen has repurchased the Corn from BFF pursuant to the terms of this Agreement, or (ii) BFF has sold the Corn to a third party (such period of time being referred to as the "**Storage Period**"). The Corn will be stored at the Holding Facilities during the Storage Period in a manner that is customary and standard for the optimum preservation and protection of the Corn. At all times during the Storage Period, Boersen will maintain property and casualty insurance covering the Holding Facilities and specifically covering the contents thereof, including the Corn, and such policy shall specify BFF as additional insured. Boersen will not move the Corn (and will not allow the Corn to be moved) during the Storage Period without the prior written approval of BFF.

3.     Repurchase of Corn by Boersen.

2

(a)     Boersen may repurchase from BFF all of the Corn (the "**Repurchase Option**") for a price per Bushel to be determined at the time of each Purchase by BFF from Boersen (each a "**Repurchase Price**") that will be indicated on Exhibit A and Exhibit B. Repurchases by Boersen may be made according to the schedule identified on Exhibit D to this Agreement commencing September 15, 2016, and continuing through August 15, 2017. Exhibit B and Exhibit D will each be amended as necessary to reflect the actual number of Bushels purchased by BFF from Boersen. All Bushels repurchased by BFF from Boersen will have been repurchased by Boersen from BFF by August 15, 2017. If Boersen does not elect to repurchase the Corn at any time as indicated on Exhibit D, it will forfeit the Repurchase Option and BFF may unilaterally sell all of the remaining the Corn in any manner it deems appropriate.

(b)     All of the Bushels repurchased by Boersen shall be paid by Boersen to BFF by wire transfer.

4.     <u>Representations and Warranties of Boersen</u>.  In addition to the other express covenants, representations, warranties, and agreements contained herein, and as a condition precedent to the obligations of BFF under this Agreement, Boersen makes the following covenants, representations and warranties which shall be true and correct as of the date hereof and which shall survive the execution, expiration, termination and/or cancellation of this Agreement:

(a)     At of the time of transfer of the Corn pursuant to each Purchase, Boersen shall have good and marketable title to all of the Corn, free and clear of any liens, security interests or other encumbrances whatsoever.  Boersen warrants that, other than as provided for under the terms of this Agreement, neither Boersen nor any other person or entity, will have any claim, right, title or interest in or to the Corn upon consummation of each Purchase.

(b)     At the time of each Purchase and throughout the time of the Storage Period, all delivered Corn shall be and remain (i) of good quality, suitable for resale and consumption by consumers in the United States, and (ii) free from disease, spoilage, rot, insects or other contamination by vermin, or other defects or infirmities.

(c)     Boersen is in sound financial condition, is fully able to pay its debts as they become due, and has no intention of filing bankruptcy now or at any time during the term of this Agreement. The execution, delivery and performance of this Agreement by Boersen (i) will not, and is not being made with any intent to, hinder, delay or defraud its creditors, and (ii) does not constitute any transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law.

(d)     There are no security interests whatsoever, and no additional security interests whatsoever will be granted during the term of this Agreement, in any of the Corn, except as necessary related to financing BFF may undertake (as such terms are defined under the North Carolina Uniform Commercial Code).

(e)     [Intentionally Omitted]

(f)     Boersen has all requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby. The execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby,

3

have been duly and validly authorized by all necessary corporate action on the part of Boersen, duly executed and delivered by Boersen, and constitutes a valid and binding obligation of Boersen, enforceable against Boersen in accordance with its terms.

(g)     The execution, delivery and performance of this Agreement do not and will not: (i) violate any law or any rule or regulation of any governmental body or administrative agency, or conflict with any judicial or administrative order or decree relating to Boersen or the Corn; (ii) constitute a breach or default under any agreement or instrument by which Boersen is bound or the Corn are affected; or (iii) create any lien or other encumbrance on any of the Corn.

(h)     No representation, warranty or statement made by Boersen in this Agreement, or any document furnished or to be furnished to BFF pursuant to this Agreement, contains or will contain any untrue statement of a material fact, or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

(i)     At all times that the Corn is in the possession of Boersen (including, without limitation, the Storage Period), Boersen shall keep and maintain the Corn free from any and all claims, encumbrances and/or liens, and shall keep, preserve and maintain the Corn in accordance with the terms of this Agreement.

5.  Default.  Without limiting any other rights or remedies which might be available at law or equity, each of the following events shall constitute an event of default (an "**Event of Default**") under the terms of this Agreement, and Boersen shall give BFF immediate written notice thereof: (a) any warranty, representation, statement, report or certificate made or delivered to BFF by Boersen, now or in the future, shall be untrue or misleading in a material respect; or (b) breach by Boersen of any representation, warranty or covenant contained in this Agreement; or (c) failure by Boersen to comply with any term, condition or obligation contained in this Agreement; (d) in the event that Boersen becomes insolvent, makes an assignment for the benefit of its creditors, or all, or substantially all, of Boersen's assets are placed in the hands of a receiver or trustee and such receivership or trusteeship continues for a period of thirty (30) days, or should Boersen institute any proceedings under any law in any jurisdiction relating to bankruptcy or insolvency seeking relief, whether discharge of debt, liquidation, or reorganization, or should any involuntary proceeding be filed against Boersen under any such bankruptcy laws, or any analogous events in any jurisdiction, and such proceeding is not discharged or removed within sixty (60) days thereafter; or (e) if Boersen (i) fails to pay any amount due, under any loan, guarantee or security agreement, on the due date or within any applicable grace period; or (ii) defaults under any other term of any loan, guarantee or security agreement to which it is a party which would allow (assuming the giving of appropriate notice if required) the holder or holders of such loan, guarantee or security to accelerate such obligation.

6.     Remedies.  Without limiting any other rights or remedies which might be available at law or equity, upon the occurrence and during the continuance of any Event of Default, and at any time thereafter, BFF, at its option, and after notice and demand, may do any one or more of the following:

(a)     Take possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of,

4

keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of like kind and amount collateral by Boersen should BFF need to take possession of collateral.

        (b)    Sell or otherwise dispose of any of the Corn, in which event Boersen shall be liable for any and all costs associated with such sale or dispossession, including, without limitation, the costs of storage pending sale. BFF shall have the right to conduct such sales on Boersen's premises without charge, for such time or times as BFF deems reasonable.

        (c)    Avail itself of any and all other rights and remedies available under applicable laws, including, without limitation, those available under the laws of the State of Michigan.

Exercise or partial exercise by BFF of one or more of its rights or remedies shall not be deemed an election, nor bar BFF from subsequent exercise or partial exercise of any other rights or remedies. The failure or delay of BFF to exercise any rights or remedies shall not operate as a waiver thereof, and all rights and remedies shall continue in full force and effect until all of the obligations of Boersen have been fully paid and performed.

      7.    <u>Governing Law; Venue; Dispute Resolution</u>. Except as otherwise provided herein, this Agreement shall be subject to the National Grain and Feed Association Grain Trade Rules, which are incorporated herein. The parties agree that the sole remedy for resolution of any and all disagreements or disputes arising under or related to this Agreement (including, but not limited to, any statutory or tort claims arising from the relationship between the parties) shall be through arbitration proceedings before the National Grain and Feed Association (NGFA) pursuant to the NGFA® Arbitration Rules without the necessity of court order, provided further that BFF consents to enforcement of the obligation to arbitrate disputes in any state or federal court and expressly waives the defenses of personal jurisdiction and venue with respect to any such action. The decision and award determined through arbitration shall be final and binding upon the parties. Judgment upon the arbitration award may be entered and enforced in any court having jurisdiction thereof. The parties agree that any arbitration conducted hereunder shall be governed by the Federal Arbitration Act, 9 United States Code §§ 1-16, as now existing or hereinafter amended. It is the intent of the parties that any continuing dispute which cannot be settled by mutual understanding between the parties, shall be initially submitted to a senior official of each party to be designated by them. Such persons shall meet promptly and use their best efforts to resolve the dispute. Such persons shall also determine whether or not they wish to retain the services of an independent mediator to assist in resolving such dispute. Unless the parties otherwise agree, meetings to resolve disputes shall be held in the office of the party which did not submit the dispute. Should such dispute not be resolved, as provided, within 30 days of submission to the designated persons, at the written request of either party, the dispute shall be resolved in accordance with this Section. Notwithstanding any other provision of this Agreement, including this Section, each party shall have the right, at any time to apply to any court of competent jurisdiction for preliminary relief.

8. <u>Miscellaneous</u>.

(a) <u>Notice</u>. Any notice, demand, request, or other communication or document to be provided under this Agreement to a party to this Agreement ("**Notice**") shall be in writing, and shall be given to the party at its address or telecopy number set forth below, or to such other address or telecopy number as the party may later specify for that purpose by notice to the other party. Each Notice shall be deemed given and received: (i) if given by email or facsimile, when the email or facsimile is transmitted and confirmation of complete receipt is received by that transmitting party during normal business hours or on the next business day if not confirmed during normal business hours; (ii) if hand delivered or given by overnight delivery service, the day on which the notice is actually received by the party; or (iii) if given by normal or certified U.S. mail, two (2) business days after it is posted with the U.S. Postal Service.

| | |
|---|---|
| If to BFF: | BF Funding, LLC |
| | 100 Elks Club Road |
| | Brevard, NC 28712 |
| | Attn: Craig Gilmore |
| | Email: cgilmore@carofin.com |
| | Fax: (828) 883-4402 |
| | |
| If to Boersen: | Boersen Farms, Inc. |
| | 6241 Ransom St. |
| | Zeeland, Michigan 49464 |
| | Attn: Dennis Boersen |
| | Email: boersenfarms@centurytel.net |
| | Fax: (616) 875-7882 |

(b) <u>Entire Agreement; Modification</u>. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all other prior understandings, correspondence and agreements, oral or written, between them. This Agreement may not be altered, amended, or modified in any way except by a written modification signed by all parties.

(c) <u>Waiver</u>. None of the terms or provisions of this Agreement shall be deemed waived except by a writing signed by the party which is entitled to the benefits thereof. The failure of any party to require performance of any provision hereof shall in no manner affect such party's right at a later time to enforce the same. The waiver by a party of any provision hereof shall not be deemed to be a continuing waiver of any such provision or a waiver of any other provision hereof.

(d) <u>Assignment</u>. This Agreement is binding upon and shall inure to the benefit of the parties and their permitted successors and assigns. This Agreement is not assignable by any party, directly or indirectly, in whole or in part, without the prior written consent of the other party.

(e) <u>Interpretation of Agreement</u>. The section and other headings in this Agreement are inserted solely as a matter of convenience and for reference, and shall be given no

effect in the construction or interpretation of this Agreement. Unless the context of this Agreement otherwise clearly requires, references in the plural form include the singular and in the singular form include the plural. This Agreement has been freely negotiated by all parties and in the event there is any controversy, dispute, or claim involving the meaning, interpretation, validity, or enforceability of this Agreement or any of its terms or conditions, there shall be no inference, presumption, or conclusion drawn against a party by virtue of such party having drafted this Agreement or any portion hereof.

(f)     Severability.  Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction and the provision that is prohibited or unenforceable shall be reformed or modified to reflect the parties' intent to the maximum extent permitted by applicable legal requirements.

(g)     Survival.  The provisions of Sections 4, 5, 6, 7, and 8 hereof, and any other provisions of this Agreement to be performed after such expiration or termination, shall survive the expiration or termination of this Agreement regardless of cause.

(h)     Independent Contractors.  Each of the parties hereto is an independent contractor and engages in the operation of its own business, and neither party hereto is or shall be considered to be the agent of the other party for any purpose whatsoever, and neither party has an authorization to enter into any contracts or assume any obligations for the other party or make any warranties or representations on behalf of the other party, other than is authorized herein, and nothing in this Agreement shall be construed to establish a relationship of co-partner or joint venturer between the parties.

(i)     Further Assurances.  The parties agree that each shall, at its own expense, at any time and from time to time after the date hereof, upon the other's request, do, execute, acknowledge and deliver all such further acts, assignments, transfers, conveyances and assurances as may be reasonably required to carry out the intent of this Agreement.

(j)     Best Efforts: Time of the Essence.  Each party agrees to use its best efforts to satisfy the conditions set forth in this Agreement and otherwise to consummate the transactions contemplated by this Agreement. Each party agrees that time is of the essence of this Agreement.

(k)     Execution and Counterparts.  This Agreement may be executed in multiple counterparts, which taken together shall constitute an original without the necessity of all parties signing the same page or the same documents, and may be executed by signatures to electronically or telephonically transmitted counterparts in lieu of original printed or photocopied documents. Signatures transmitted by facsimile shall be considered original signatures.

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

BFF FUNDING, LLC

By: _____
Name:  CFG Financial Services, LLC/Brace Roberts
Its: Manager


BOERSEN FARMS, INC.

By: _____
Name:  Dennis Boersen
Its:  President

8

Exhibit A: Corn Purchase Receipt

# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT  NO.   _____
DATE   August 31, 2016
CUSTOMER ID   _____

SOLD TO   BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | TOTAL DISCOUNT | | |
|---|---|---|---|---|---|
| | | | | SUBTOTAL | |
| | | | | SALES TAX | |
| | | | | TOTAL | |

9

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 8/31/2016 | $2.4606 | 10,299,080 | $25,341,411.57 | |
| 9/15/2016 | | 46,988 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 93,804 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 96,925 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 93,804 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 96,925 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 1,453,084 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 1,431,237 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 1,425,441 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 1,409,836 | | $2.90/15-May-17 |
| 6/15/2017 | | 1,397,798 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 1,383,084 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 1,370,154 | | $2.90/15-Aug-17 |

Exhibit C: Holding Facilities

| Location | Bushels of Corn Stored | Inspection Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

11

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 46,988 | $136,264.58 |
| 10/15/2016 | 93,804 | $272,029.15 |
| 11/15/2016 | 96,925 | $281,080.12 |
| 12/15/2016 | 93,804 | $272,029.15 |
| 1/15/2017 | 96,925 | $281,080.12 |
| 2/15/2017 | 1,453,084 | $4,213,942.85 |
| 3/15/2017 | 1,431,237 | $4,150,586.05 |
| 4/15/2017 | 1,425,441 | $4,133,777.10 |
| 5/15/2017 | 1,409,836 | $4,088,522.24 |
| 6/15/2017 | 1,397,798 | $4,053,611.35 |
| 7/15/2017 | 1,383,084 | $4,010,942.48 |
| 8/15/2017 | 1,370,154 | $3,973,445.60 |



M-51 Bins: 63600 M-51 Paw Paw, MI 49079

| Key | Diameter | Rings Total | Rings of Grain | Cone Up/Down | Commodity | Bushels |
|---|---|---|---|---|---|---|
| #1-Bin 1 | 105′ | 34 | 33.5 | Down | Corn | 680,000 |
| #2-Bin 2 | 105′ | 34 | 33.5 | Down | Corn | 680,000 |
| #3-Bin 3 | 105′ | 34 | 13 | Down | Corn | 252,202 |
| #4-Bin 4 | 105′ | 34 | 26 | Down | Corn | 523,944 |
| #5-Bin 5 (not pictured) | 105′ | 34 | 33 | Up | Corn | 716,507 |
| #6-Wet Bin 1 | 36′ | 22 | 3 | Up | Corn | Empty |
| #7-Wet Bin 2 | 36′ | 26 | 24.5 | Up | Corn | 54,775 |
| #8-Wet Bin 3 | 36′ | 26 | 23 | Down | Corn | 51,415 |
| #9-Overhead Loadout | 24′ | 18 | 17 | Up | Corn | 17,000 |
| #10-Dryer 1 | | | | | | |
| #11-Dryer 2 | | | | | | |
| #12-Dryer 3 | | | | | | |
| #13-Electrical Room/Pit | . | | | | | |





# SALES RECEIPT

## Boersen Farms, Inc..

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   1
DATE   September 6, 2016
CUSTOMER ID   _____

SOLD TO     BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828..393..0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 232,163.90 | | Bushels of # 2 Yellow Corn | $      2.44 | | $    566,545.19 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

|  | TOTAL DISCOUNT | |
|---|---|---|
| | SUBTOTAL | $    566,545.19 |
| | SALES TAX | |
| | TOTAL | $    566,545.19 |

Boersen Farms, Inc. & Áffiliates

By: Dennis Boersen
Its: President

### THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/6/2016 | $2.44 | 232,164 | $566,545.19 | |
| 9/15/2016 | | 638 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 2,118 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 2,189 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 2,118 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 2,189 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 32,815 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 32,322 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 32,191 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 31,839 | | $2.90/15-May-17 |
| 6/15/2017 | | 31,567 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 31,235 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 30,943 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | · Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 638 | $1,851.11 |
| 10/15/2016 | 2,118 | $6,143.51 |
| 11/15/2016 | 2,189 | $6,347.91 |
| 12/15/2016 | 2,118 | $6,143.51 |
| 1/15/2017 | 2,189 | $6,347.91 |
| 2/15/2017 | 32,815 | $95,164.48 |
| 3/15/2017 | 32,322 | $93,733.68 |
| 4/15/2017 | 32,191 | $93,354.08 |
| 5/15/2017 | 31,839 | $92,332.08 |
| 6/15/2017 | 31,567 | $91,543.68 |
| 7/15/2017 | 31,235 | $90,580.08 |
| 8/15/2017 | 30,943 | $89,733.28 |



**SALES RECEIPT**

## Boersen Farms, Inc.

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.  2
DATE  September 9, 2016
CUSTOMER ID  _____

SOLD TO

BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 280,276 | | Bushels of #2 Yellow Corn | $   2.44 | | $   · 683,295.86 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL DISCOUNT | | | |

|  |  |
|---|---|
| SUBTOTAL | $   683,295.86 |
| SALES TAX | |
| TOTAL | $   683,295.86 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/9/2016 | $2.44 | 280,276 | $683,295.86 | |
| 9/15/2016 | | 516 | | $2.90/15-Sep-16 |
| 10/15/2016 | | 2,560 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 2,645 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 2,560 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 2,645 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 39,652 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 39,056 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 38,898 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 38,472 | | $2.90/15-May-17 |
| 6/15/2017 | | 38,143 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 37,742 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 37,389 | | $2.90/15-Aug-17 |

10

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 9/15/2016 | 516 | $1,495.81 |
| 10/15/2016 | 2,560 | $7,423.40 |
| 11/15/2016 | 2,645 | $7,670.39 |
| 12/15/2016 | 2,560 | $7,423.40 |
| 1/15/2017 | 2,645 | $7,670.39 |
| 2/15/2017 | 39,652 | $114,990.41 |
| 3/15/2017 | 39,056 | $113,261.53 |
| 4/15/2017 | 38,898 | $112,802.85 |
| 5/15/2017 | 38,472 | $111,567.93 |
| 6/15/2017 | 38,143 | $110,615.28 |
| 7/15/2017 | 37,742 | $109,450.93 |
| 8/15/2017 | 37,389 | $108,427.72 |



# SALES RECEIPT

## Boersen Farms, Inc.

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   3
DATE   September 21, 2016
CUSTOMER ID   _____

SOLD TO     BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 19,260 | | Bushels of #2 Yellow Corn | $    2.40 | | $    46,213.67 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

|  | |
|---|---|
| SUBTOTAL | $    46,213.67 |
| SALES TAX | |
| TOTAL | $    46,213.67 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/21/2016 | $2.3995 | 19,260 | $46,213.67 | |
| 10/15/2016 | | 143 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 182 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 177 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 182 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 2,735 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 2,693 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 2,683 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 2,653 | | $2.90/15-May-17 |
| 6/15/2017 | | 2,631 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 2,603 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 2,579 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 143 | $413.33 |
| 11/15/2016 | 182 | $528.99 |
| 12/15/2016 | 177 | $511.96 |
| 1/15/2017 | 182 | $528.99 |
| 2/15/2017 | 2,735 | $7,930.37 |
| 3/15/2017 | 2,693 | $7,811.14 |
| 4/15/2017 | 2,683 | $7,779.50 |
| 5/15/2017 | 2,653 | $7,694.34 |
| 6/15/2017 | 2,631 | $7,628.64 |
| 7/15/2017 | 2,603 | $7,548.34 |
| 8/15/2017 | 2,579 | $7,477.77 |

# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   4
DATE   September 26, 2016
CUSTOMER ID   _____

SOLD TO    BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 19,231.44 | | Bushels of #2 Yellow Corn | $     2.51 | | $     48,336.50 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

| | | |
|---|---|---|
| SUBTOTAL | $ | 48,336.50 |
| SALES TAX | | |
| TOTAL | $ | 48,336.50 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/26/2016 | $2.5134 | 19,231 | $48,336.50 | |
| 10/15/2016 | | 114 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 182 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 177 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 182 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 2,735 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 2,693 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 2,683 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 2,653 | | $2.90/15-May-17 |
| 6/15/2017 | | 2,631 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 2,603 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 2,579 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 114 | $331.13 |
| 11/15/2016 | 182 | $528.99 |
| 12/15/2016 | 177 | $511.96 |
| 1/15/2017 | 182 | $528.99 |
| 2/15/2017 | 2,735 | $7,930.37 |
| 3/15/2017 | 2,693 | $7,811.14 |
| 4/15/2017 | 2,683 | $7,779.50 |
| 5/15/2017 | 2,653 | $7,694.34 |
| 6/15/2017 | 2,631 | $7,628.64 |
| 7/15/2017 | 2,603 | $7,548.34 |
| 8/15/2017 | 2,579 | $7,477.77 |

3



# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO. 5
DATE September 29, 2016
CUSTOMER ID _____

SOLD TO BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 192,144 | | Bushels of #2 Yellow Corn | $ 2.46 | | $ 471,980.29 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |

| | | |
|---|---|---|
| SUBTOTAL | $ | 471,980.29 |
| SALES TAX | | |
| TOTAL | $ | 471,980.29 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/28/2016 | $2.4564 | 192,144 | $471,980.29 | |
| 10/15/2016 | | 972 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 1,824 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 1,765 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 1,824 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 27,346 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 26,935 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 26,826 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 26,532 | | $2.90/15-May-17 |
| 6/15/2017 | | 26,306 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 26,029 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 25,785 | | $2.90/15-Aug-17 |

1

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|---|---|---|
| 10/15/2016 | 972 | $2,818.19 |
| 11/15/2016 | 1,824 | $5,289.89 |
| 12/15/2016 | 1,765 | $5,119.56 |
| 1/15/2017 | 1,824 | $5,289.89 |
| 2/15/2017 | 27,346 | $79,303.70 |
| 3/15/2017 | 26,935 | $78,111.37 |
| 4/15/2017 | 26,826 | $77,795.04 |
| 5/15/2017 | 26,532 | $76,943.37 |
| 6/15/2017 | 26,306 | $76,286.37 |
| 7/15/2017 | 26,029 | $75,483.37 |
| 8/15/2017 | 25,785 | $74,777.71 |

3



# SALES RECEIPT

**Boersen Farms, Inc.**

6241 Ransom Street
Zeeland, MI 49464
616-875-7880
boersenfarms@centurytel.net

RECEIPT NO.   6
DATE   September 30, 2016
CUSTOMER ID   _____

SOLD TO      BF Funding, LLC

100 Elks Club Road
Brevard, NC 28712
828.393.0088

This receipt is part of that certain BF Purchase and Sale
Agreement dated 8.31.2016 by and between BF Funding,
LLC and Boersen Farms, Boersen Farms, Inc., Boersen
Farms Grain, Boersen Farms Ag, LLC and its affiliates.

| PAYMENT METHOD | CHECK NO. | JOB |
|---|---|---|
| Wire Transfer | | |

| QTY | ITEM # | DESCRIPTION | UNIT PRICE | DISCOUNT | LINE TOTAL |
|---|---|---|---|---|---|
| 57,626.29 | | Bushels of #2 Yellow Corn | $    2.42 | | $   139,220.50 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |
| | | | | SUBTOTAL | $   139,220.50 |
| | | | | SALES TAX | |
| | | | | TOTAL | $   139,220.50 |

Boersen Farms, Inc. & Affiliates

By: Dennis Boersen
Its: President

THANK YOU FOR YOUR BUSINESS!

Exhibit B: Corn Purchase Schedule

| Date | Purchase Price | Purchase Amount (Bushels) | Total Purchase Price | Repurchase Price/Repurchase Deadline |
|---|---|---|---|---|
| 9/30/2016 | $2.4159 | 57,626 | $139,220.50 | |
| 10/15/2016 | | 275 | | $2.90/15-Oct-16 |
| 11/15/2016 | | 547 | | $2.90/15-Nov-16 |
| 12/15/2016 | | 530 | | $2.90/15-Dec-16 |
| 1/15/2017 | | 547 | | $2.90/15-Jan-17 |
| 2/15/2017 | | 8,204 | | $2.90/15-Feb-17 |
| 3/15/2017 | | 8,080 | | $2.90/15-Mar-17 |
| 4/15/2017 | | 8,048 | | $2.90/15-Apr-17 |
| 5/15/2017 | | 7,960 | | $2.90/15-May-17 |
| 6/15/2017 | | 7,892 | | $2.90/15-Jun-17 |
| 7/15/2017 | | 7,809 | | $2.90/15-Jul-17 |
| 8/15/2017 | | 7,736 | | $2.90/15-Aug-17 |

Exhibit D: Corn Repurchase Schedule

| Date | Bushels Repurchased | Total Repurchase Price |
|------|---------------------|------------------------|
| 10/15/2016 | 275 | $796.14 |
| 11/15/2016 | 547 | $1,586.97 |
| 12/15/2016 | 530 | $1,535.87 |
| 1/15/2017 | 547 | $1,586.97 |
| 2/15/2017 | 8,204 | $23,791.11 |
| 3/15/2017 | 8,080 | $23,433.41 |
| 4/15/2017 | 8,048 | $23,338.51 |
| 5/15/2017 | 7,960 | $23,083.01 |
| 6/15/2017 | 7,892 | $22,885.91 |
| 7/15/2017 | 7,809 | $22,645.01 |
| 8/15/2017 | 7,736 | $22,433.31 |

3

STATE OF MICHIGAN

36TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

BF FUNDING, LLC, a North Carolina
Limited Liability Company,

      **Plaintiff,**

V

BOERSEN FARMS, INC., BOERSEN
FARMS AG, LLC, BOERSEN FARMS
& AFFILIATES, LLC, BOERSEN AG
PARTNERS, LLC, BOERSEN LAND
CO LLC, and affiliated companies,
DENNIS BOERSEN, and CHS
CAPITAL, LLC,

      · **Defendants.**

Case No. 17-      -CB

Hon.

<u>BUSINESS COURT CASE</u>
This case qualifies as a business or
commercial dispute as defined by MCL
600.8031 and should be assigned to the
Business Court Docket

---

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiff
THERE IS NO OTHER PENDING OR
RESOLVED CIVIL ACTION ARISING
OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN THE
COMPLAINT.

1

## VERIFIED COMPLAINT

Plaintiff, BF FUNDING, LLC, by and through its attorneys, CLARK HILL PLC, and for its Verified Complaint, states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      BF Funding, LLC ("BF Funding" and/or "BFF") is a North Carolina limited liability company, with a principal office address of 100 Elks Club Rd., Brevard, NC 28712-4842.

2.      Defendant, Boersen Farms, Inc., is a Michigan corporation with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Sandra Boersen is the Registered Agent of Boersen Farms, Inc.

3.      Defendant, Boersen Farms Ag, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Farms Ag, LLC.

4.      Defendant, Boersen Farms & Affiliates, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Farms & Affiliates, LLC.

5.      Defendant, Boersen Ag Partners, LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Ag Partners, LLC.

6.      Defendant, Boersen Land Co LLC, is a Michigan limited liability company with a registered office address of 6241 Ransom St., Zeeland, MI 49464.  Dennis Boersen is the Registered Agent of Boersen Land Co LLC.

2

7.      Defendants Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, and Boersen Land Co LLC and its affiliates, are collectively referred to herein as ("Boersen Farms" and/or "Boersen").

8.      On information and belief, Boersen Farms conducts business as Boersen Farms and/or Boersen Farms Grain.

9.      Boersen Farms conducts business in Van Buren County.

10.     Defendant, Dennis Boersen ("D. Boersen"), is the Resident Agent, officer, member and owner/or owner of Boersen Farms. D. Boersen conducts business in Van Buren County.

11.     Defendant, CHS Capital, LLC ("CHS"), is a Colorado limited liability company conducting business in Van Buren County.  The Registered Agent for CHS is Registered Agent Solutions, Inc.  The Registered Office Address for CHS is 2285 S. Michigan Rd., Eaton Rapids, MI 48027.

12.     Venue is proper pursuant to MCL 600.1621(a), MCL 600.1627, MCL 600.1629 and MCL 600.1641.

13.     The amount in controversy is in excess of $25,000.00, exclusive of interest, costs and attorney fees, and jurisdiction is otherwise proper in this Court.

**GENERAL ALLEGATIONS**

14.     BF Funding incorporates all preceding paragraphs as if restated in full.

15.     Defendants Boersen Farms is in the business of growing and storing corn for eventual sale to ethanol producers and others.

16.     BF Funding is in the business of purchasing, warehousing and selling corn.

3

17.     BF Funding entered into a purchase and sale agreement ("Purchase Agreement") with Boersen Farms on August 29, 2016 for the purchase of up to 11,000,000 Bushels of harvested, dried and shelled corn ("Corn"). See Corn Purchase and Sale Agreement attached as Exhibit A.

18.     Pursuant to the Purchase Agreement, Boersen Farms agreed to store the Corn at Boersen Farms' storage facilities, located at 63600 M-51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079 ("Storage Facilities").

19.     Boersen Farms was able to re-purchase Corn from BF Funding pursuant to certain terms and conditions in the Purchase Agreement.

20.     Boersen Land Co LLC owns/owned the property on which the Storage Facility is located.

21.     Boersen Farms agree to maintain property and casualty insurance covering the Storage Facility and Corn, and that the policy would name BF Funding as an additional insured. Exhibit A.

22.     Pursuant to the Purchase Agreement, Boersen Farms warranted that all Corn would be free of all liens and encumbrances. Exhibit A.

23.     Boersen Farms ensured BF Funding, that it had good and marketable title to all of the Corn, free and clear of any liens, security interests, or other encumbrances. Exhibit A.

24.     Boersen Farms agreed that no security interest would be granted during the term of the Purchase Agreement. Exhibit A.

25.     Pursuant to 7 US 1631(d), "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest

4

created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest."

26. Because BF Funding did not receive written notice of a security interest in the Corn one year before the purchase of the Corn, BF Funding purchased the Corn free from any security interests.

27. BF Funding received a letter on or about October 3, 2016 from CHS Capital, LLC ("CHS"), stating that future payments must be made payable to CHS.

28. BF Funding ceased purchasing Corn from Boersen Farms after receipt of the letter from CHS.

29. Boersen Farms failed to respond to BF Funding's inquiries regarding the CHS debt and alleged assignment.

30. Boersen Farms acquiesced in the ceasing of purchase orders.

31. BF Funding purchased 800,701.63 bushels of Corn pursuant to the Purchase Agreement. See Sales Receipts attached as Exhibit B.

32. Boersen Farms exercised its Repurchase Option on 29,804 bushels.

33. Although BF Funding provided Boersen Farms multiple opportunities to re-purchase Corn, Boersen Farms failed to exercise any further Repurchase Options.

34. Beginning April 7, 2017, BF Funding began selling the purchased Corn to a third party.

35. Through May 4, 2017, BF Funding obtained 492,097.16 bushels of its Corn from Boersen Farms' silos.

36. 278,800.47 bushels of Corn purchased by BF Funding remains in the possession of Boersen Farms and/or CHS, and are being stored at the Storage Facility located at 63600 M-

51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079, and/or other storage facilities own, operated, or used by Boersen Farms and/or CHS.

37.     On information and belief, Boersen Farms conveyed certain real property to CHS, which may include the storage facilities at which BF Funding's Corn is being stored.

38.     The 278,800.47 bushels of Corn owned by BF Funding which remain in the possession of Boersen Farms and/or CHS is valued at $986,953.66 (based on Cargill's May 30, 2017 price of $3.54/bushel at its Decatur, Michigan facility).

39.     The Purchase Agreement provides that BF Funding may "[t]ake possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of, keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of the like kind and amount collateral by Boersen should BFF need to take possession of collateral." Exhibit A.

40.     Pursuant to the Purchase Agreement, BF Funding also has the right to sell its Corn and conduct a sale of the Corn on Boersen Farms' property.

41.     The 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities, are BF Funding's property.

42.     Neither Boersen Farms nor CHS have permitted BF Funding to take possession of the 278,800.47 bushels of BF Funding's Corn.

6

43.     Neither Boersen Farms nor CHS has any rights or interest in the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities.

44.     Neither Boersen Farms nor CHS have any right to transfer, sell, convey, encumber, or remove BF Funding's 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

<u>COUNT I - BREACH OF CONTRACT</u>

45.     BF Funding incorporates all preceding paragraphs as if restated in full.

46.     Boersen Farms entered into a Purchase Agreement with BF Funding for the sale of Corn to BF Funding.  Exhibit A.

47.     BF Funding purchased 800,701.63 bushels of Corn from Boersen Farms pursuant to the Purchase Agreement.

48.     278,800.47 bushels of Corn purchased by BF Funding remain in the possession of Boersen Farms and/or CHS.

49.     Boersen Farms and/or CHS has failed and refused to release, deliver, or turn over the 278,800.47 bushels of Corn purchased by BF Funding.

50.     Boersen Farms' refusal to release, deliver, or turn over the 278,800.47 bushels of Corn purchased by BF Funding constitutes breach of the Purchase Agreement.

51.     Boersen Farms' misrepresentations regarding its financial condition prior to the parties entering the Purchase Agreement constitutes a breach of the Purchase Agreement.

52.     Boersen Farms' insolvency constitutes a breach of the Purchase Agreement.

53.     Boersen Farms' misrepresentations regarding the existence of security interest in the Corn constitutes a beach of the Purchase Agreement.

7

54.    Boersen Farms' failure to pay its debts when due constitutes a breach of the Purchase Agreement.

55.    BF Funding has been damaged as a result of Boersen Farms' breaches of the Purchase Agreement, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

WHEREFORE, Plaintiff BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, and Boersen Land Co LLC, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT II - UNJUST ENRICHMENT AGAINST BOERSEN FARMS AND CHS

56.    BF Funding incorporates all preceding paragraphs as if restated in full.

57.    BF Funding has paid Boersen Farms for 278,800.47 bushels of Corn that it has not received.

58.    BF Funding has conferred valuable benefits to Boersen Farms in consideration for the 278,800.47 bushels of Corn.

59.    The reasonable value of the benefit BF Funding has conferred to Boersen Farms is the value of the 278,800.47 bushels of Corn which remains in Boersen Farms' and/or CHS' possession.

60.    The 278,800.47 bushels of Corn purchased by BF Funding which remain in the possession of Boersen Farms and/or CHS is valued at $986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

215834974.2 58332/316093

61. Boersen Farms and/or CHS have asserted unlawful possession or dominion over the 278,800.47 bushels of Corn purchased by BF Funding without compensating BF Funding.

62. Despite repeated demands, Boersen Farms and/or CHS have refused to release the 278,800.47 bushels of Corn purchased by BF Funding and/or otherwise compensate BF Funding for the market value of the Corn.

63. Boersen Farms and/or CHS have benefited by taking unauthorized possession and/or use of the 278,800.47 bushels of Corn owned by BF Funding without compensating BF Funding, and therefore have been unjustly enriched by the market value of the Corn.

64. It would be inequitable if Boersen Farms and/or CHS were permitted to retain the valuable benefits conferred by BF Funding without complete compensation to BF Funding for the market value of the Corn.

WHEREFORE, Plaintiff BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and CHS Capital, LLC, in the amount of $986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT III - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

65. BF Funding incorporates all preceding paragraphs as if restated in full.

66. Boersen Farms and CHS were aware that BF Funding intended to sell the 278,800.47 bushels of Corn to third parties.

67. The Purchase Agreement provides that BF Funding may sell the purchased Corn, including the 278,800.47 bushels of Corn in Boersen Farms' possession, to third parties if not timely repurchased by Boersen Farms.

9

68. Beginning April 7, 2017, BF Funding began selling the purchased Corn to a third party.

69. The 278,800.47 bushels of Corn purchased by BF Funding remains in the possession of Boersen Farms and/or CHS.

70. Boersen Farms and/or CHS have failed and refused to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding.

71. Boersen Farms' and/or CHS' refusal to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding constitutes tortious interference with BF Funding's sale of its Corn.

72. Boersen Farms' and/or CHS's intentionally interfered with the sale of BF Funding's Corn by unlawfully converting the Corn for its own use and/or by otherwise wrongfully refusing to release, deliver, or turn over the 278,800.47 bushels of Corn owned by BF Funding.

73. Boersen Farms' and/or CHS's interference has caused the sale of the Corn to the third party purchaser to not be completed.

74. As a result of Boersen Farms' and/or CHS's actions, BF Funding has and will continue to incur substantial damages plus interest and attorney fees.

75. Boersen Farms and/or CHS have knowingly and improperly interfered with BF Funding's relationship and expectancy with the third-party purchaser of the Corn.

76. As a direct and foreseeable result of Boersen Farms' and/or CHS's intentional and improper interference, BF Funding has and will continue to suffer substantial damages in the form of market value of the Corn, lost profits, interest and attorney fees, lost business

10

opportunities, loss of goodwill and damage to reputation, such that damages alone cannot fully compensate the BF Funding for its loss.

77.    BF Funding is also entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and CHS Capital, LLC, in the amount of $986,953.66, plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT IV – FRAUDULENT MISREPRESENTATION

78.    BF Funding incorporates all preceding paragraphs as if restated in full.

79.    As provided above, Boersen Farms made false material assertions to induce BF Funding to enter into the Purchase Agreement.

80.    Boersen Farms represented that it would maintain property and casualty insurance covering the Storage Facility and Corn, and that the policy would name BF Funding as an additional insured. Exhibit A.

81.    Pursuant to the Purchase Agreement, Boersen Farms warranted that all Corn would be free of all liens and encumbrances. Exhibit A.

82.    Boersen Farms ensured BF Funding, that it had good and marketable title to all of the Corn, free and clear of any liens, security interests, or other encumbrances. Exhibit A.

83.    Boersen Farms agreed that no security interest would be granted during the term of the Purchase Agreement. Exhibit A.

11

84.     Boersen Farms misrepresented its financial condition to induce BF Funding to enter into the Purchase Agreement.

85.     Boersen Farms misrepresented that it was solvent to induce BF Funding to enter into the Purchase Agreement.

86.     Boersen Farms knew the above-mentioned representations to BF Funding were false.

87.     Boersen Farms knew that the representations were false when made, or made the representations recklessly, without knowledge of the truth.

88.     Boersen Farms made the representations to induce BF Funding's reliance.

89.     BF Funding separately relied on each of the misrepresentation made by Boersen Farms which induced BF Funding to enter into the Purchase Agreement with Boersen Farms.

90.     As a result of reliance on the false material assertions, BF Funding has suffered and will continue to suffer substantial damages.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and Dennis Boersen in the amount of $ 986,953.66 plus all costs incurred, attorney fees, storage costs, costs of sale, lost profits, interest and all other relief this Court finds just and appropriate.

## COUNT V - DECLARATORY RELIEF

91.     BF Funding incorporates all preceding paragraphs as if restated in full.

12

92.     This is a case of actual controversy between BF Funding and Boersen Farms and CHS within the jurisdiction of this Court as provided for by MCR 2.605.

93.     Pursuant to MCR 2.605, this Court is conferred with the authority to declare the rights and other legal relations of interested parties.

94.     Due to the wrongful actions of Boersen Farms and/or CHS, BF Funding has and will continue to incur significant damages as detailed above.

95.     Boersen Farms' and/or CHS' unreasonable and unauthorized actions require immediate adjudication so that BF Funding may rightfully obtain its property and complete its contracts with third parties.

96.     In accordance with the foregoing, there exists an actual controversy between the Parties regarding the rights to the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities, and declaratory relief is appropriate.

97.     The controversy between the Parties impacts BF Funding's ability to complete its contracts for the sale of its rightful property.

98.     Immediate adjudication of the controversy is necessary in order to guide the Parties' conduct and preserve the Parties' rights.

99.     Declaratory relief is necessary to establish BF Funding's right to the 278,800.47 bushels of Corn purchased by BF Funding and stored at Boersen Farms' and/or CHS' storage facilities.

100.    Declaratory relief is necessary to prohibit Boersen Farms and/or CHS from taking further actions to interfere with BF Funding's property rights and contractual rights to take possession of the 278,800.47 bushels of Corn.

13

101.   Pursuant to MCR 2.605, BF Funding requests that this Court declare the rights of the parties with respect to the instant controversy and require Boersen Farms and/or CHS to: (1) turn over 278,800.47 bushels of Corn to BF Funding; (2) and pay BF Funding its actual costs and expenses incurred in connection with this matter.

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court issue a Declaratory Judgment:

A.   Declaring that BF Funding, LLC is the rightful owner of 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities;

B.   Ordering Boersen Farms and/or CHS to turn over and release 278,800.47 bushels of Corn to BF Funding;

C.   Ordering Boersen Farms and/or CHS to pay BF Funding its actual costs and expenses incurred in connection with this matter;

D.   Awarding BF Funding its costs, attorney fees and such other relief as may be appropriate.

## COUNT VI – TEMPORARY RESTRAINING ORDER / PERMANENT INJUNCTION

102.   BF Funding incorporates all preceding paragraphs as if restated in full.

103.   As stated in this Verified Complaint and Plaintiffs' Verified Ex Parte Motion For Temporary Restraining Order, Order To Show Cause, Preliminary Injunction and For Possession Pending Final Judgment, filed simultaneously herewith, Boersen Farms and/or CHS have damaged and will continue to damage: BF Funding, its business relationships and expectancy, name and good will, and standing in the industry.

104.   BF Funding has repeatedly attempted to take possession of its 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

14

105. However, despite BF Funding's demands, Boersen Farms and/or CHS have failed and refused to turn over and release the 278,800.47 bushels of Corn to BF Funding.

106. BF Funding will suffer immediate and irreparable injury, loss, and damage if the Court does not immediately issue an order granting the relief sought.

107. Further, an ex parte order is necessary because notice of complaint and motion will precipitate adverse action by Boersen Farms and/or CHS before an order can be issued.

108. Boersen Farms and/or CHS are in possession of BF Funding's property.

109. On information and belief, Boersen Farms and/or CHS will attempt to sell BF Funding's 278,800.47 bushels of Corn.

110. BF Funding's remedies at law are inadequate and they will suffer immediate and irreparable damage if injunctive relief is not granted immediately.

111. The value and operation of BF Funding's business will be greatly tarnished and diminished if the Court does not take immediate action.

112. As more fully set forth in the motion and supporting Brief: (1) BF Funding is likely to succeed on the merits, (2) BF Funding will suffer immediate and irreparable harm, (3) neither Boersen Farms nor CHS will suffer substantial harm, and (4) the public interest favors injunctive relief.

113. CHS has already attempted to wrongfully claim a security interest in BF Funding's Corn, in violation of 7 US 1631(d).

114. The threatened and actual substantial harm inflicted on BF Funding outweighs any potential injury that Boersen Farms and CHS may assert.

15

215834974.2 58332/316093

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court grant its Motion and enter the *Ex Parte* Temporary Restraining Order, and Order to Show Cause, in the form attached to the Motion granting Plaintiffs the following relief:

A.     Issue a temporary restraining order to enjoin Boersen Farms and CHS from transferring, selling, conveying, releasing, disposing, encumbering, or removing any corn from storage facilities currently owned, operated or used by Boersen Farms, or otherwise transferred by/from Boersen Farms and currently owned, operated or used by CHS until further order of the Court;

B.     Issue a show cause order scheduling a hearing date on an expedited basis at which time, Boersen Farms and CHS must appear and show cause why a preliminary injunction should not be issued while the case is pending; and

C.     Order any other relief this Court deems appropriate.

## COUNT VII – CLAIM AND DELIVERY

115.   BF Funding incorporates all preceding paragraphs as if restated in full.

116.   Pursuant to the Purchase Agreement, BF Funding has purchased and owns 278,800.47 bushels of Corn stored at Boersen Farms' and/or CHS' storage facilities.

117.   Pursuant to 7 US 1631(d), "a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest."

16

118.    Because BF Funding did not receive written notice of a security interest in the Corn one year before the purchase of the Corn, BF Funding purchased the Corn free from any security interests.

119.    On information and belief, BF Funding's 278,800.47 bushels of Corn remain in the possession of Boersen Farms and/or CHS, and are being stored at the Storage Facility located at 63600 M-51, Paw Paw, MI 49079, aka 43348 64th Ave, Paw Paw, MI 49079, and/or other storage facilities own, operated, or used by Boersen Farms and/or CHS.

120.    BF Funding is entitled to immediate possession of the 278,800.47 bushels of Corn.

121.    The 278,800.47 bushels of Corn are not in Boersen Farms' and/or CHS' custody by virtue of any execution or attachment against the personal property of BF Funding, nor by virtue of any warrant for the collection of taxes, assessments, or fines.

122.    By virtue of the Purchase Agreement, and MCL 600.2920, BF Funding is entitled to immediate possession of 278,800.47 bushels of Corn.

123.    The Purchase Agreement provides that BF Funding may "[t]ake possession of the Corn, and for that purpose Boersen hereby authorizes BFF without judicial process to enter onto any of Boersen's premises (including, without limitation, the Holding Facilities) without interference to search for, take possession of, keep, store, or remove any of the Corn, and remain on such premises or cause a custodian to remain on the premises in exclusive control thereof, without charge for so long as BFF deems it reasonably necessary in order to complete the enforcement of its rights under this Agreement or any other agreement. Each of Boersen and BFF agree to the substitution of the like kind and amount collateral by Boersen should BFF need to take possession of collateral." Exhibit A.

17

124.    Pursuant to the Purchase Agreement, BF Funding also has the right to sell the Corn and conduct a sale of the Corn on Boersen Farms' property.

125.    The 278,800.47 bushels of Corn are presently subject to damage, sale, or deterioration due to failure to allow BF Funding to recover them, the passage of time, depreciation, and disposal or dissipation by Boersen Farms and/or CHS.

126.    On information and belief, the 278,800.47 bushels of Corn are not covered by insurance in accordance with the requirements of the Purchase Agreement.

127.    Despite BF Funding's requests, Boersen Farms and/or CHS have refused to turn over, release, or deliver the 278,800.47 bushels of Corn to BF Funding or otherwise allow BF Funding to access and seize its property.

WHEREFORE, BF Funding, LLC, respectfully requests that this Court:

a.      Issue an order requiring Boersen Farms and/or CHS to refrain from transferring, selling, conveying, releasing, using, damaging, destroying, concealing, disposing, encumbering or substantially impairing the value of any corn from storage facilities currently owned, operated or used by Boersen Farms, or otherwise transferred by/from Boersen Farms and currently owned, operated or used by CHS, until further order of the Court;

b.      Enter a judgment granting BF Funding immediate possession of 278,800.47 bushels of Corn and/or a judgment for $986,953.66 against Boersen Farms and CHS;

c.      Order the Sheriff or other court officer to seize 278,800.47 bushels of Corn from Boersen Farms and/or CHS within twenty-one (21) days and deliver it to BF Funding; and

18

d.      Award BF Funding all other interim and final relief, including monetary

damages, costs, and attorney fees, as the Court finds equitable and just.

## COUNT VIII – CONVERSION

128.    BF Funding incorporates all preceding paragraphs as if restated in full.

129.    BF Funding has purchased and owns 278,800.47 bushels of Corn stored at

Boersen Farms' and/or CHS' storage facilities.

130.    Boersen Farms and/or CHS have wrongfully converted or asserted dominion over

BF Funding's 278,800.47 bushels of Corn for their own use and benefit.

131.    Boersen Farms and/or CHS have failed and refused to turn over, release, or

deliver the 278,800.47 bushels of Corn to BF Funding.

132.    By so doing, Boersen Farms and/or CHS have converted the 278,800.47 bushels

of Corn for their own use and benefit, to the detriment of BF Funding without its consent.

133.    Boersen Farms' and/or CHS' actions constitute conversion under MCL

§600.2919a and/or common law conversion.

134.    Boersen Farms' and/or CHS' conversion of BF Funding's property has caused BF

Funding actual damages in the amount of $986,953.66, plus costs and attorney fees.

135.    Pursuant to MCL 600.2919a, BF Funding is entitled to recover damages in the

amount of three times the amount of actual damages, plus costs and reasonable attorney fees.

136.    Under MCL 600.2919a(2), "This recovery is in addition to any other right or

remedy the person may have at law or otherwise."

WHEREFORE, Plaintiff, BF Funding, LLC, respectfully requests that this Court enter a

Judgment in its favor, and against Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC,

19

Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, Dennis

Boersen, and CHS Capital, LLC, in the treble damages amount of $2,960,860.98, plus all costs

and attorney fees, pursuant to MCL 600.2919a and the Purchase Agreement, and all other relief

this Court finds just and appropriate.

<u>Verification</u>

Bruce Roberts, being duly sworn, states as follows:

1.      I have reviewed the foregoing Complaint.

2.      I have personal knowledge of the facts set forth in the Complaint.

3.      The facts and statements contained within the Complaint are true to the best of my

knowledge, information and belief.

Date: May 3|____, 2017

_____

Bruce Roberts, Manager of Carolina Financial
Group, LLC, Managing Member of BF
Funding LLC.

Subscribed and sworn to before me
this 3| day of May, 2017.

_____, Notary Public

Transylvania County, North Carolina.
Acting in Transylvania County, North Carolina.
My Commission Expires: 4|25|2022

> JANE STAMEY
> Notary Public – North Carolina
> Transylvania County
> My Commission Expires Apr 25, 2022

Date: May June 2 ____, 2017

Respectfully submitted,

CLARK HILL PLC

By: _____

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys For Plaintiff

20

# STATE OF MICHIGAN

## IN THE 36TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

BF FUNDING, LLC,
a North Carolina limited liability company,

      Plaintiff,

v

BOERSEN FARMS, INC., BOERSEN FARMS
AG, LLC, BOERSEN FARMS &
AFFILIATES, LLC, BOERSEN AG
PARTNERS, LLC, BOERSEN LAND CO
LLC, and affiliated companies, DENNIS
BOERSEN, and CHS CAPITAL, LLC.

      Defendants.

Case No.: 17-          -CB

Hon.          067045

**BUSINESS COURT CASE**
This case qualifies as a business or
commercial dispute as defined by MCL
600.8031 and should be assigned to the
Business Court Docket.

---

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
Clark Hill PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiff, BF Funding, LLC

*********************************
THERE IS NO OTHER PENDING OR
RESOLVED CIVIL ACTION ARISING
OUT OF THE TRANSACTION OR
OCCURRENCE ALLEGED IN THE
COMPLAINT
*********************************

---

## ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE AND ORDER FOR POSSESSION PENDING FINAL JUDGMENT

      At a session of said Court, held in the
      Circuit Court in the Village of Paw Paw,
      County of Van Buren, State of Michigan,
      on the _____ day of June, 2017.

      PRESENT:    Hon. _____
                Circuit Court Judge

      This matter having been brought before this Court by way of Plaintiff's *Ex Parte* Motion

for Temporary Restraining Order, Order to Show Cause and Order for Possession Pending Final

Judgment, the Court having reviewed the pleadings and documents filed, and being otherwise

adequately advised in the premises;

17

215850259.1 58332/316093

THIS COURT FINDS:

1.      Plaintiff BF Funding, LLC, has presented evidence that it purchased and is the rightful owner of 278,800.47 bushels of harvested, dried and shelled Corn in Defendants possession.

2.      Plaintiff, BF Funding, LLC, will be irreparably harmed if its Corn is not returned to it, sold by Defendants or by the sale of Boersen Farms assets;

3.      Plaintiff BF Funding, LLC has presented evidence that its Purchase Agreement allows it to take possession of the Corn.

4.      Immediate and irreparable injury, loss, and damage will result to BF Funding, LLC, if the Court does not restrain the sale of Corn or dissipation of Boersen Farms assets;

5.      Plaintiff, BF Funding, LLC, has a very strong likelihood of success on the merits of its claims against Defendants based on the counts in its Verified Complaint;

6.      Defendants are not being deprived of any rights or property, and will not be harmed by temporarily delaying the sale of assets and distribution of proceeds; and

7.      The public has a strong interest in discouraging conversion of one's property, debt avoidance tactics and maintaining the status quo while the rights and obligations of the parties are determined through the judicial process.

**WHEREFORE, IT IS HEREBY ORDERED:**

1.      Defendants, Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co, LLC, and affiliated companies, Dennis Boersen and CHS Capital, LLC are hereby restrained and enjoined from:

        a.      Disposing of any Corn or proceeds derived from the sale of any Corn;

18

b.      Using, expending, destroying, concealing, or disposing of Corn or proceeds thereof, or drawing checks or other charges against the funds held any accounts holding proceeds of Defendants' sale of the Corn, until further order of the Court; and

c.      Otherwise disposing of the assets of Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co, LLC, and affiliated companies, Dennis Boersen and CHS Capital, LLC.

2.      That the funds held in accounts belonging to Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co, LLC, and affiliated companies, Dennis Boersen and CHS Capital, LLC, to the extent they derive from the sale of the Corn, up to $986,953.66, plus all interest which may have accrued on the accounts, are the property of BF Funding and must be turned over to BF Funding upon presentment of this Order.

3.      Defendants shall produce records showing the locations where they are currently storing harvested, dried and shelled corn and the quantities stored at each location.

4.      Defendants shall produce all evidence that any amounts held in any accounts belonging to Defendants, which Defendants claim are not the profits of the sale of the Corn.

5.      Defendants shall turn over 278,800.47 bushels of Corn to BF Funding upon presentment of this Order, deposit $986,953.66 in an escrow interest bearing account, or make arrangement to segregate and protect, maintain and care for said amount of Corn until further order of this Court.

6.      Defendants shall appear and show cause why a preliminary injunction should not be issued while the case is pending.   The Show Cause Hearing is scheduled for _____, 2017.

19

7.      Copies of this Order will be served on the Defendants at least forty-eight (48) hours prior to the time fixed for showing cause and that proof of said service be made and filed with this Court.

8.      This Order will not expire unless so ordered by this Court after oral argument and hearing in front of this Court.

**IT IS SO ORDERED.**

_____
Circuit Court Judge

TRUE COPY

JUN 0 2 2017

Van Buren County Clerk

20

STATE OF MICHIGAN

IN THE 36TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF VAN BUREN

| | |
|---|---|
| BF FUNDING, LLC,<br>a North Carolina limited liability company,<br><br>       Plaintiff,<br><br>v<br><br>BOERSEN FARMS, INC., BOERSEN FARMS<br>AG, LLC, BOERSEN FARMS &<br>AFFILIATES, LLC, BOERSEN AG<br>PARTNERS, LLC, BOERSEN LAND CO<br>LLC, and affiliated companies, DENNIS<br>BOERSEN, and CHS CAPITAL, LLC.<br><br>       Defendants. | Case No.: 17-      -CB<br><br>Hon.<br><br>**BUSINESS COURT CASE**<br>This case qualifies as a business or<br>commercial dispute as defined by MCL<br>600.8031 and should be assigned to the<br>Business Court Docket. |

| | |
|---|---|
| Charles A. Lawler (P65164)<br>Brian P. Lick (P71577)<br>Clark Hill PLC<br>212 East Grand River Avenue<br>Lansing, Michigan 48906<br>(517) 318-3100<br>Attorneys for Plaintiff, BF Funding, LLC | ********************************<br>THERE IS NO OTHER PENDING OR<br>RESOLVED CIVIL ACTION ARISING<br>OUT OF THE TRANSACTION OR<br>OCCURRENCE ALLEGED IN THE<br>COMPLAINT<br>******************************** |

**BRIEF IN SUPPORT OF PLAINTIFF'S VERIFIED *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE, PRELIMINARY INJUNCTION AND MOTION FOR POSSESSION PENDING FINAL JUDGMENT**

Plaintiff, BF Funding, LLC ("BF Funding" and/or "Plaintiff"), by and through its attorneys, Clark Hill PLC, for its Brief in Support of its Verified *Ex Parte* Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction and Motion for Possession Pending Final Judgment, pursuant to MCR 3.105 and MCR 3.310 against Boersen Farms, Inc., Boersen Farms AG, LLC, Boersen Farms & Affiliates, LLC, Boersen AG Partners, LLC, Boersen Land Co LLC, and affiliated companies (collectively referred to as "Boersen Farms"

8

and/or "Boersen"), Dennis Boersen ("D. Boersen") and CHS Capital, LLC ("CHS") (collectively the "Defendants") states as follows:

## I.   INTRODUCTION

Plaintiff purchased and is the rightful owner of 278,800.47 bushels of corn in Defendants' possession. There is no genuine issue of material fact that Plaintiff is entitled to recovery of its Corn or damages in the amount $2,960,860.98, plus all costs and attorney fees, pursuant to MCL 600.2919a and the Purchase Agreement. The facts clearly indicate that Boersen Farms is experiencing financial difficulties and CHS is attempting to secure its collateral, in this case even Corn that is not owned by Boersen Farms.

Upon information and belief, Boersen Farms has turned control of all of its assets over to CHS. Because Boersen Farms has turned control of its assets and the Corn over to CHS, immediate Court intervention is necessary to avoid irreparable harm to BF Funding, maintain the status quo until further order of the Court, and to ensure that BF Funding receives its Corn which it is entitled as the owner. Because of the turning over control of Boersen Farms assets and failure to allow BF Funding to pick up its Corn, BF Funding will certainly be damaged from further delaying the entry of the order.

## II.   STATEMENT OF FACTS

The core of this case involves Defendants' exploitation of the relationship between the parties and Defendants' failure to deliver or allow pickup of the Corn it holds that has been paid for and is the property of BF Funding.

In support of its Verified *Ex Parte* Motion for Temporary Restraining Order, Order to Show Cause, Preliminary Injunction, and Motion for Possession Pending Final Judgment, BF Funding relies on the statements and facts set forth in its Verified Complaint and Verified Motion.

9

## III. ARGUMENT

### A. *Authority of the Court to Issue an Ex Parte Temporary Restraining Order*

This Court has authority to issue a temporary restraining order in this case to prevent additional irreparable harm to BF Funding. Such an order is appropriate in light of the high probability that Boersen Farms is no longer solvent, is unwilling to allow BF Funding to pick up its Corn, has turned control of its assets over to CHS, and is likely disposing of the Corn and proceeds as well as other assets of Boersen Farms. Michigan Court Rule 3.310(B), entitled "Temporary Restraining Orders," in its pertinent part, states:

> (1) A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney if: (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued; (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application,
>
> (2) a temporary restraining order granted without notice must: (a) be endorsed with the date and time of issuance; (b) described the injury and state why it is irreparable and why the order was granted without notice; (c) except in domestic relations actions, set a date for hearing at the earliest possible time of the motion for a preliminary injunction or order to show cause why a preliminary injunction should not be issued.

The granting of injunctive relief is within the sound discretion of the court, and the decision must be based on the facts of the particular case. *Soergel v Preston*, 141 Mich App 585; 367 NW2d 366 (1985). Where a party requests relief of an equitable nature (*i.e.*, establishment of

10

an escrow account or enjoinment from spending funds), the discretion of the court is a controlling guide. *Holland v Miller*, 325 Mich 604, 612; 39 NW2d 87 (1949). A court in equity molds its relief according to the character of the case. *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708 (1993). That is, the Court can, in its discretion, fashion an equitable remedy to fit the unique factual circumstances of a case. MCL 600.611 grants circuit courts the "jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments."

An *ex parte* restraining order may be issued pending a hearing on a motion or order to show cause why a preliminary injunction should not issue where it clearly appears from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss or damage, or physical injury to the applicant will result, and a prompt hearing is required after the party restrained has actual notice of the order. *Michigan State Treasurer v Turner*, 110 Mich App 228; 312 NW2d 418 (1981).

### B. *A Temporary Restraining Order is Appropriate in the Case at Bar*

In deciding whether Plaintiffs are entitled to a temporary restraining order, courts generally consider four factors: (1)  Whether plaintiffs have a strong likelihood of success on the merits; (2) Whether plaintiffs would suffer irreparable harm if injunctive relief is not issued; (3) Whether any harm to plaintiffs in the absence of a stay outweighs the harm which might be incurred by defendants if a stay is granted; and (4)  Whether the public interest would be served by the issuance of injunctive relief. *Addison Township v Department of State Police*, 220 Mich App 550; 560 NW2d 67 (1996); *Psychological Services of Bloomfield, Inc. v Blue Cross & Blue Shield*, 144 Mich App 182; 375 NW2d 382 (1985). The object of injunctive relief is to preserve the status quo, so that upon final hearing the rights of the parties may be determined without

215850259.1 58332/316093

injury to either. *Michigan Council 25, AFSCME v County of Wayne*, 136 Mich App 21; 355 NW2d 624 (1984). The status quo which will be preserved by injunctive relief is the last actual, peaceable, noncontested status which preceded the pending controversy. *Id.*

These factors are reviewed in balance of one another and do not serve as "prerequisites that must be met." *In Re DeLorean Motor Co*, 755 F2d 1223, 1229 (6th Cir 1985). Thus, when the likelihood of success on the merits is great, as in this case, a showing on the other elements becomes less important. *Id.* Analysis of each of the four factors here militate in favor of granting the requested relief. The object of injunctive relief is to preserve the status quo, so that upon final hearing the rights of the parties may be determined without injury to either. *Michigan Council 25, AFSCME v County of Wayne*, 136 Mich App 21; 355 NW2d 624 (1984). The status quo which will be preserved by injunctive relief is the last actual, peaceable, non-contested status which preceded the pending controversy. *Id.*

    1.    *Likelihood of Success on the Merits*

The evidence in this case establishes that, BF Funding has a very strong likelihood of success on the merits. Boersen Farms clearly entered into the Purchase Agreement with BF Funding. (See Exhibits A and C attached to Motion) By failing to repurchase or allow BF Funding to pick up its Corn, Boersen Farms breached the terms of the Purchase Agreement. CHS's failure to allow BF Funding to remove its Corn from Boersen Farms storage facility was and continues to be an act of conversion of the Corn and said unlawful conversion entitles BF Funding to treble damages and attorney fees because there is no dispute that BF Funding purchased 278,800.47 bushels of Corn in Defendants possession.

2. *Irreparable Harm Exists*

If Defendants are not restrained from disposing of the Corn and/or Boersen Farms assets, including without limitation the Corn and proceeds thereof, BF Funding will be irreparably harmed by Defendants' unlawful and unwarranted actions, loss of property, spoilage, and diminution of value with no recourse against insolvent Boersen Farms.

3. *Public Interest and Weighing the Harm*

Granting a Temporary Restraining Order in this instance will further the public interest. The public has a strong interest in the enforcement of contracts. The public also has a strong interest in preventing legal entities and individuals from avoiding judgment on obligations arising out of their contracts. Moreover, Defendants are not being deprived of any rights or property which Defendants have been paid for and are the property of BF Funding . Rather, this Order will ensure the Corn and/or proceeds, as well as other assets of Defendants, are preserved until this Court has had an opportunity to make a ruling on the issues in the above-captioned matter.

C. *An Order For Possession Pending Final Judgment Is Appropriate*

MCR 3.105, based on a specific provision of the Revised Judicature Act, provides substantive procedural rights to those entitled to recover possession of goods and chattels. *See* MCR 3.105 and MCL § 600.2920. The Rule allows for the filing of a verified motion for possession pending final judgment, a prompt hearing thereon, and a variety of interim relief to be granted by the court should the circumstances so warrant. MCR 3.105(E). Until such time as a hearing may be held, the court may order that the defendant refrain from damaging, destroying, concealing, disposing of, or substantially impairing the value of the property until further order of the court. MCR 3.105(E)(2).

13

The Rule further provides that after proofs have been taken on the motion for possession pending final judgment, the court may order whatever relief the evidence requires. MCR 3.105(E)(4). As specified by the Rule, this may include ordering the property seized, or alternatively, requiring the defendant to file a bond, payable to the plaintiff, in an amount at least twice the value of the property stated in the complaint on an agreement by the defendant that the property will be surrendered and damages paid should the plaintiff be adjudged entitled to possession. MCR 3.105(E)(4)(c); MCR 3.105 (E)(4)(b).

Defendants are in possession of, control of, and have access to the Corn and/or proceeds from the sale of said Corn which is wrongfully being withheld from BF Funding as its rightful owner pursuant to the contracts between the parties. Although the requisite showing is simply that the claim be "probably valid," BF Funding's probability of success in this case is great. As set forth in the Verified Complaint and Verified Motion, BF Funding is entitled to the Corn and/or proceeds in Defendants' possession. Finally, the relief requested herein is consistent with and does not exceed the remedies available under Michigan Law.

## IV. CONCLUSION

Immediate Court intervention is necessary to avoid irreparable harm to BF Funding, maintain the status quo until further order of the Court, and to ensure that BF Funding receives its Corn and/or any portion of the proceeds to which it may be entitled as the owner of the Corn. Because of the financial condition of Boersen Farms and their failure to allow BF Funding to pick up its Corn, Plaintiff will certainly be damaged from further delaying the entry of the order.

WHEREFORE, Plaintiff, BF Funding, LLC, for the reasons stated in this Brief and in the Motion filed contemporaneously with this Brief, respectfully requests that this Court grant its *Ex Parte* Motion and enter the *Ex Parte* Temporary Restraining Order, Order to Show Cause and

Order for Possession Pending Final Judgment, in the form attached as Exhibit D to the Motion, granting Plaintiff the following relief:

A. Issue a Temporary Restraining Order to enjoin Defendants from: (1) disposing of any of the Corn or proceeds of said Corn; (2) disposing of other assets of Defendants;

B. Issue a show cause order scheduling a hearing date on an expedited basis at which time Defendants must appear and show cause why a preliminary injunction should not be issued while the case is pending;

C. Issue an order requiring Defendants to refrain from using, expending, destroying, concealing, or disposing of the Corn, or drawing checks or other charges against any accounts holding proceeds of Defendants' sale of Corn, until further order of the Court;

D. Enter an Order determining that 278,800.47 bushels of Corn and/or proceeds of said Corn are the property of BF Funding and ordering the Corn and/or proceeds to be transferred to Plaintiff;

E. Order Defendants to produce all evidence that any funds held in accounts maintained by Defendants are not proceeds of the sale of the Corn;

F. Award Plaintiff all other interim and final relief, including monetary damages, costs, and attorney fees, as the Court finds equitable and just.

15

215850259.1 58332/316093

Respectfully submitted,

CLARK HILL PLC

By: _____

Dated: June ___ 2, 2017

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

TRUE COPY

JUN 0 2 2017

Van Buren County Clerk

16

215850259.1 58332/316093